## WILLIAMS VS. WILLIAMS.

*Appealable order. Divorce. Alimony and suit-money.*

1. In an action by the wife for a divorce, etc., after an order made requiring defendant, on a specified day, to show cause before the court why a greater sum should not be allowed for temporary alimony, the matter was not heard at the time fixed, but, by stipulation, was subsequently heard and determined by the judge at chambers; and the order made by him, by its terms, related back to the day first fixed, allowing an increased weekly sum as alimony from that day. *Held*, that this must be treated as an order *of the court*, and appealable directly to this court.

2. On appeal from an order allowing additional suit money, made after judgment of divorce, where the motion papers, incorporated in the "case," show that upon the trial of the action the court found the issues for the plaintiff, and also show the time consumed by the trial,

Williams vs. Williams.

the expenses thereof and the pecuniary circumstances of the parties, the judge's minutes of the trial (even if used on the motion), are neither a necessary nor a proper part of the "case."

3. In divorce suits, the court has plenary power over the whole subject of alimony and allowance, both before and after judgment rendered; and it may reserve its adjudication as to the amount of permanent alimony until *after* the judgment of divorce, and, in the meantime, may order the payment of temporary alimony or suit money.

4. This court will not interfere with such determination of the circuit court, unless it is apparent that some of the conditions which should have been considered, have been overlooked to the injury of the husband or wife.

5. The general rule as to temporary alimony is, to allow the wife (having no income of her own) one-fifth of the husband's income, if that be ascertained, for her own support.

6. The circumstances under which a larger allowance may be made, discussed.

7. It appearing here that the value of defendant's property *does not exceed* $30,000, and there being no evidence as to the amount of his income therefrom, the court assumes that it does not exceed *six per cent.* of said valuation.

8. Under these circumstances, an allowance of $400 per annum for the support of the plaintiff herself, and of $500 per annum for the support of a daughter aged 17 and son aged 14 (whose care and custody are awarded to her)would be sufficient.

9. Where the complaint charged the defendant generally, and in numerous specifications, with acts of habitual unkindness to plaintiff and her children, and the answer denied and recriminated by similar charges, and the trial occupied, in fact, about a month, and several eminent counsel from an adjoining state were employed by both parties, this court, believing that the case was not really one of extraordinary difficulty or complexity, that the trial occupied a needlessly long time, that the expenses for counsel fees and other purposes were greater than necessary, and that additional expenses, caused by a change of venue on plaintiff's application without sufficient apparent reason, should not be allowed her, holds an allowance for suit money of $3,550 extravagant, and directs an allowance of $1,000 only therefor, exclusive of taxable disbursements.

10. When it renders judgment for permanent alimony, the circuit court should award plaintiff judgment for the taxable disbursements in the action.

11. In order to determine the amount to be allowed for permanent alimony, the court should first require the defendant to submit to an exam-

ination concerning his property and income, and to furnish a full statement thereof, and then, if the plaintiff disputes the correctness of such account, she should indicate to the court and the defendant the particulars in which she claims it to be erroneous or defective, and the parties be allowed afterwards to introduce testimony in relation thereto.

APPEAL from the Circuit Court for *Polk* County.

This action is for a divorce, on the ground of cruel and inhuman treatment, and was commenced April 1st, 1869.

The first appeal is from an order of the circuit court, requiring the defendant to pay the plaintiff $25 per week from the 15th day of April, 1871, as temporary alimony; and the second appeal is from another order which requires him to pay her $3,000 for her expenses in the action, in addition to the sum of $550, which he had theretofore paid her on account of such expenses, pursuant to previous orders of the court.

The complaint charges that the defendant has been guilty of many acts of cruel and inhuman treatment of the plaintiff, which are therein stated in detail; and avers that the plaintiff has no estate or means of her own; that the defendant owns real estate of the value of $30,000, and personal estate of the value of $10,000; and that his net annual income is $5,000.

The answer of the defendant substantially denies the allegations of cruel and inhuman treatment contained in the complaint. It also denies that the defendant is worth over $20,000, and avers positively that he has no income over and above his expenses. Both the complaint and answer are duly verified.

Soon after the action was commenced, the court made an order giving the plaintiff the custody of the only daughter of the parties, who was then fourteen years of age, and requiring the defendant to pay the plaintiff $14 per week for the maintenance of herself and the daughter, and $250 on account of her expenses in the litigation. Subsequently the circuit court made another order requiring him to pay the plaintiff $300 additional suit money. It appears that the defendant paid

such weekly allowance about two years, and until the making of the order first appealed from; and also that he paid the $550 pursuant to the orders for suit money.

The action was commenced in the circuit court for St. Croix county, where the parties and most of their witnesses resided; but, on the petition of the plaintiff, representing that the judge of the eighth judicial circuit (which circuit includes that county) had been of counsel for her in some matters pertaining to the litigation, the place of trial was changed to Polk county, which is in the 11th judicial circuit, although the defendant opposed such change, and offered to, and did stipulate in writing to waive the objection that the circuit judge was so disqualified to try the action.

Osceola, the county seat of Polk county, where the cause was ultimately tried, is some thirty miles from the city of Hudson, which is the county seat of St. Croix county. The parties, and probably many of the witnesses who testified on the trial, reside at the latter place, and doubtless the expenses of both parties in the action were much greater than they would have been had the action been tried at Hudson.

After such change of venue, the history of the case is not dissimilar to that of other contested divorce cases which from time to time are litigated in our courts, except that several eminent counsel, both from this state and Minnesota, were employed on on either side, and the trial occupied the court continuously from October 26th to December 1st, with the single exception, that, during its progress, George, aged about six years, the youngest son of the parties, died; and there was an armistice of four days to enable the combatants to bury their dead. The daily sittings of the court usually continued from nine o'clock, A. M., to nine o'clock, P. M.

The court found the issues for the plaintiff, and adjudged a divorce in accordance with the prayer of the complaint, but reserved the question of permanent alimony for further adjudication. Such judgment was entered February 24th, 1871, and it

also gave the plaintiff the custody of the only surviving son of the parties, who was then about thirteen years of age.

The order from which the first appeal was taken, was made in form by the circuit judge at chambers, and bears date May 15th, 1871, but is founded upon an order to show cause before the circuit court for Polk county on the 15th of April, 1871, why a greater sum should not be allowed the plaintiff as temporary alimony. The matter was not heard at the time fixed therefor by such order to show cause, but was heard and determined by the judge at chambers pursuant to the stipulation of the parties to that effect. And the order thus made by the judge at chambers, by its terms, relates back to the 15th of April, and allows the plaintiff $25 per week for the maintenance of herself and the children from the latter date.

The second order appealed from was made by the court, and bears date June 21st, 1871. The substance of this order has already been stated.

*L. P. Wetherby and Vilas & Bryant,* for appellant :

1. The sum allowed for alimony by the first order was excessive, and out of proportion to the husband's means. 2 Bishop on Marriage and Divorce, §§ 455–61 ; *Collins v. Collins,* 29 Ga., 517 ; *Morrell v. Morrell,* 2 Barb., 480 ; *Denton v. Denton,* 1 Johns. Ch., 364; *Mix v. Mix,* id., 108 ; *Craven v. Craven,* 4 Bush. (Ky.), 436 ; *Burr v. Burr,* 7 Hill, 207 ; *Cox v. Cox,* 3 Add., 276 ; *Moore v. Moore,* 3 Swa. & Tris., 606 ; *Harris v. Harris,* 1 Hay. Ec., 351 ; *Butler v. Butler,* Milward, 629 ; *Goodheim v. Goodheim,* 2 Swa. & Tris., 250 ; *Hammond v. Hammond,* 1 Clarke's Ch., 151 ; *Bauman v. Bauman,* 18 Ark., 320–331. The order was improvidently made, without taking the proper proofs as to the ability and property of the defendant. 2. The second order was also improvident and excessive. The statute only authorizes the allowance of a *necessary* sum. R. S., ch. 111, sec. 16. The employment of more than one competent attorney was unnecessary. *Burgess v. Burgess,* 1 Duvall (Ky.), 287 ; *Dugan v. Dugan,* id., 289. The allowance should be

Williams vs. Williams.

merely a reasonable sum, and not governed by what the services of the attorneys employed may be proved to be worth. *Baldwin v. Baldwin*, 6 Gray, 341; 2 Bishop Mar. & Div., § 391, cases cited in notes: *Forrest v. Forrest*, 5 Bosw., 672. 3. The minutes of the judge constitute no part of the case. There is no authority for founding any motion on them except one for a new trial.

*H. A. Wilson, C. Baker & J. C. Spooner*, for respondent:

1. The first order appealed from is simply an order of the judge at chambers, and not appealable directly to the supreme court. The defendant should have first moved the court to vacate or modify it, and appealed from the order on that motion. 13 Wis., 413; 16 id., 537. 2. The order was made in the sound discretion of the circuit judge, and no abuse of such discretion is shown. The allowance for plaintiff's support should be made with some reference to her former position in life, and not be based solely upon the defendant's income. *Schmidt v. Schmidt*, 26 Mo., 235, 263; 2 Bishop on Mar. & Div., § 449; 1 Rich. Eq., 282. The admission as to defendant's property in his answer is sufficient to justify the order. An additional sum was necessary in this case for the support of the son, who was placed in charge of the plaintiff. 3. The printed case does not contain the minutes of the court upon which, in part, the orders were based, and for that reason, this court will not review them. 20 Wis., 491; 5 id., 83; 12 id., 543; 15 id., 603; 16 id., 90. 4. It was proper, after entry of judgment in favor of the plaintiff, to make her an allowance for expenses of suit already incurred and to be incurred in trying the remaining issue. Such allowance should not be confined to mere taxable costs, but should include a reasonable sum for counsel fees (1 Barb. Ch. 610; 1 Paige, 83; 2 id., 62); and what is a reasonable sum depends upon the amount of labor performed by such counsel.

LYON, J. I. It is objected by counsel for the plaintiff that the order of May 15th, 1871, was made by the judge at cham-

bers, and for that reason is not appealable to this court until the same shall have been reviewed by the circuit court. But in view of the circumstances under which it was made, we regard it as substantially an order of the circuit court, from which an appeal lies to this court. Those circumstances are set out in the foregoing statement of facts, and need not be repeated here.

II. Neither do we perceive any force in the objection that the minutes of the judge, which it is alleged were used on the hearing of the motion for additional suit money, are not returned and printed as a part of the case on the second appeal. The motion papers show that the court found the issues for the plaintiff. They also show the time consumed in the trial and the expenses thereof. In fixing the amount of the allowance for the expense of the litigation, the material facts to know are, not what the testimony was, but what it proved; also, how much the litigation has necessarily cost the plaintiff, and what are the pecuniary circumstances of the parties. The findings of the circuit court upon the issues show what the testimony proved; and the other facts necessary to be known are stated in the motion papers. Had a bill of exceptions containing the minutes of the judge, duly settled and signed by him, been read on the hearing of the motion, and had the same been returned to this court and printed in the case, counsel would not have been permitted to read it on the argument. And this for the reason just indicated, that a knowlege of the contents of such bill of exceptions would not aid us in the least in the decision of the appeal.

It is to be remembered, further, that Judge Wetherby, in his affidavit of February 13th, 1872, deposes that the minutes of the judge were not in any manner referred to or used upon the hearing of the motion.

III. The objection urged by counsel for the defendant, that after the court had adjudged a divorce it had no power to make the orders appealed from, is also untenable. There can be no valid

grounds of objection to the course pursued in this case, of disposing of the main issue first, and, if that be found for the plaintiff, adjudicating the question of permanent alimony afterwards. And, until such adjudication, it is equally clear that the court may order the defendant to pay temporary alimony, or suit money, which is a species of temporary alimony. These results necessarily flow from the plenary power which the court has over the whole subject of alimony and allowances, as well after as before judgment. R. S., ch. 111, sec. 28.

These rules of practice seem too plain to require the citation of authorities, or any further discussion to sustain them.

IV. We now proceed to consider the merits of the orders appealed from. It is indisputable that the circuit court, in the exercise of a sound judicial discretion, has power in divorce cases to make allowances to the wife, to be paid by the husband for the support, during the litigation, of herself and such of the children of the parties as may be committed to her care and custody, and for her expenses in prosecuting or defending the action. Such discretion is to be exercised with reference to all of the facts and circumstances of the case which will affect the amount of such allowances, and with due regard to certain legal rules which are almost universally recognized and applied by the courts in such cases. When the circuit court has fixed the amount of such allowances, and ordered the husband to pay the same, this court will not interfere therewith, unless it is apparent that some of the conditions which should have been considered by the court below have been overlooked or disregarded, to the manifest injury either of the husband or the wife.

In awarding temporary alimony, a primary, and indeed a controlling consideration is the extent of the husband's income, and his ability to pay the sum so awarded. 2 Bishop on Marriage and Divorce, § 455. This consideration derives increased importance from the fact that the husband is liable, in this state, to be imprisoned for non-payment of temporary alimony,

when the same has been awarded to the wife. *In re Gill*, 20 Wis., 686. When the income of the husband is ascertained, if the wife (as in this case) has no income, the ordinary rule of temporary alimony is to allow her about one-fifth of the husband's income. This is regarded as a fair medium, although the proportion may be varied somewhat to meet the exigencies of particular cases. 2 Bishop on Mar. and Div., § 460. This rule has reference only to the allowance for the support of the wife, and does not include the support of children or the expenses of the action. If the husband be of sufficient ability, the allowance should be such as to enable the wife to live comfortably; and if his estate is large, she should be furnished with means to live in something like the style and manner to which she has been accustomed. This is more especially the rule in cases where, as in this case, it appears that the health of the wife is impaired, and the breach of the marriage contract by the husband has been judicially determined. Yet we apprehend that the cases are few in which the circuit courts will be justified in allowing a larger proportion of the husband's income for the support of the wife, *pendente lite*, than that above indicated. Certainly, in a large majority of the reported cases which have come under our observation, and in which temporary alimony has been allowed, that proportion has been recognized or acted upon as the correct rule for determining the amount of such allowance.

In the view of the case above suggested, it becomes necessary to ascertain, as nearly as may be, the pecuniary resources and income of the defendant. Of these we have no very satisfactory statement. The plaintiff gives the descriptions of a large number of lots in the city of Hudson, and of two forty-acre lots in the north part of this state, of all which, together with valuable real estate in Minnesota and Iowa (not described), she avers that the defendant is the owner. She further avers that such real estate is worth $30,000, and that the defendant owns personal estate worth $10,000, and she estimates his annual income

at $5,000. On the other hand, the defendant denies owning any real estate except village lots and a, store and dwelling house in Hudson, and forty acres of wild land outside of that city; and he deposes that the whole value of his entire property, both real and personal, does not exceed of $20,000, and that his income from all sources, over and above his expenses, is not one dollar. The foregoing is all the information which the record gives us in respect to the defendant's property.

We construe the evidence liberally for the plaintiff when we find that the defendant is worth $30,000; and, in view of the general experience of land owners, merchants and business men of this state, for the last three years, we estimate very liberally in her favor when we estimate the net annual income from the defendant's property at six per cent. of its value. On this basis the defendant has a net annual income of $1,800. Applying the rule above stated, we do not think that the plaintiff should be allowed over $400 a year for her individual support; and, were it not that the defendant has been adjudged guilty of the charges against him contained in the complaint, we should be constrained to fix the allowance at a less sum. To this sum there should be added $500 a year for the support of the children, so far as they need support from their mother. This gives the plaintiff $900 a year, or $75 a month for the support of herself, and the partial or entire support of her daughter, who is seventeen, and her son, who is fourteen years of age. It is a sum as large as is earned by each of a large majority of good mechanics and skilled laborers, of teachers, and perhaps it would not be far wrong to add clergymen, in this state; and yet upon that income, and even less, thousands of these support families of three and more persons comfortably, and give to their children a fair education.

We are of the opinion that the plaintiff can support herself, and, so far as is necessary, her children, respectably with $900 per annum. If she cannot do so, it is her misfortune that her late husband is not more wealthy than he now appears to be.

V. The views submitted under the last head relate mainly to the order giving the plaintiff an allowance for herself and the children. We will now examine the order allowing suit money.

The court has power, in an action for a divorce, "in its discretion, to require the husband to pay any sums necessary to enable the wife to carry on or defend the action during its pendency." R. S., ch. 111, sec. 16. In this case, it will be assumed that the defendant is able to pay all necessary sums to enable the plaintiff to carry on the action; and the only question is, what sums are necessary for that purpose?

The complaint charges that the defendant, during the coverture, was habitually unkind and cruel to the plaintiff and to their children, and specifies many acts of cruelty and inhumanity inflicted by him upon them. The answer denies such habitual unkindness and cruelty, and denies or excuses the specific acts so charged. It also recriminates by charging the plaintiff generally, and also in various specified instances, with unkind and improper language and conduct towards the defendant and the children, during the married life of the parties.

The issues thus made by the pleadings are simple, plain issues of fact, not differing essentially in character or number from those frequently presented in contested actions for divorces for the cruelty of husbands. They are of the same general character as those usually made in actions for assault and battery, and not more difficult. The only difference is in the number of the specifications. Neither does the case involve any very intricate questions of law. In this respect, a large majority of contested actions to recover the possession of real estate take precedence of it. Were it not for the fact that the trial occupied the court over a month, we should be entirely unable to recognize this as a case of colossal proportions. Indeed, notwithstanding the length of the trial, we quite fail to see any thing in the case to distinguish it from ordinary actions for divorces on the same grounds. We find nothing in the case which convinces us that the array of eminent counsel, who were

employed on either side, was necessary, or that the trial was necessarily so protracted. If, for greater safety, or from a mistaken idea of the magnitude or the exigencies of the case, the plaintiff retained three eminent counsel; or if, in a superabundance of good nature, the circuit judge permitted the trial to be protracted to so great length in the investigation of simple questions of fact, and which we must believe might reasonably have been disposed of in much less time; we certainly shall take no exception thereto. These are matters of judgment or taste, or perhaps of physical endurance, with which we have no concern further than to consider their necessity.

There can be no doubt whatever that either one of the attorneys for the plaintiff, without any very severe strain upon his professional ability, would have conducted this action to the same result. Two counsellors of St. Paul, Messrs. Brisbin and Davis, whose fame for learning and eloquence has extended far beyond the limits of their state, were retained in the case. It is said that the defendant first retained Mr. Brisbin, and thereupon the plaintiff deemed it necessary to employ Mr. Davis. It must be remembered, however, that in the first instance the plaintiff employed two leading and able attorneys from Hudson, either of whom, as already observed, was abundantly competent to manage and conduct her case; and the fact that she did so, affords the defendant some excuse for associating Mr. Brisbin with Judge Wetherby as counsel in the case.

It seems to us, also, that the expenses of the litigation were unnecessarily increased by the change of the place of trial from St. Croix to Polk county. Surely the plaintiff should not have hesitated to go to trial in the place where the parties had resided during nearly all their married life; and we think that she ought to have accepted the stipulation, and permitted the case to be tried at Hudson. At least, we do not think that the additional expenses caused by the change of the place of trial should be charged to the defendant, under the cirumstances.

Williams vs. Williams.

It is true that the question of permanent alimony remains to be disposed of, and the investigation of the defendant's pecuniary affairs will necessarily involve some additional expense. But there is no necessity that such expense should be very large. The court should require the defendant in the first instance to submit to an examination concerning his property and income, and also to furnish a full statement thereof. Then, if the plaintiff disputes the correctness of any item of the account, or believes that anything is omitted therefrom which it ought to contain, she should indicate to the court and to the opposite party the particulars wherein she claims that the defendant's statement is erroneous or defective; and then at some future time the parties can produce their witnesses, and litigate the disputed items. But no expense for witnesses should be incurred until after the defendant has furnished such statement and submitted to such examination. In nine cases out of ten, the circuit judge can so satisfy himself of the extent of the husband's estate and of his income, by a personal examination of the husband, that he needs no further testimony to enable him to make a just allowance of permanent alimony. It is quite probable in this case that the judge will not find it necessary to have any further testimony on the subject than that of the parties to the action.

The itemized account of plaintiff's expenses in the action, exclusive of counsel fees and taxable disbursements, is about $950. The taxable disbursements are excluded, because when the circuit court renders the judgment for permanent alimony it is proper that it also adjudge the defendant to pay the taxable disbursements of the plaintiff in the action. The allowances of suit money amount to $3,550, from which deduct the above expenses and there remains $2,600 for counsel fees. The judge of the eleventh judicial circuit receives a salary of $2,500 per annum for his official services, and pays his personal expenses out of that allowance. We all know that he brings to the discharge of his judicial duties learning and ability of a

high order, and we know also that those duties prevent him from engaging to any considerable extent in business pursuits, yet he is giving the best years of his life to faithful public service for really much less than an annual compensation of $2,500. The questions naturally arise, are judicial services as valuable as legal services? And, if so, is there in this case work enough necessarily to occupy an attorney one year or one-third of that time? We do not intend to question the correctness of the claim that legal services to the value of several thousand dollars were rendered in the case by the counsel for the plaintiff. What we controvert is the *necessity* for as large an expenditure therefor.

But further discussion will be unprofitable. We have reached the conclusion that one thousand dollars is the highest amount that should have been allowed for suit money, including all of the orders therefor. Four hundred dollars is ample, we think, to pay the necessary expenses of the action beyond taxable disbursements, and six hundred dollars the utmost limit to which we are willing to go in fixing, and compelling the defendant to pay, the plaintiff's necessary attorneys' fees. And this sum must include all taxable attorneys' fees in both the circuit courts, and in this court.

While, in this case, we do not find that any one has been actuated by mercenary motives, or that the expenses have been wantonly increased for the purpose of injuring the defendant, yet it is quite obvious that the effect of making large allowances to the wife would be greatly to increase and multiply divorce suits, and to render them chiefly unseemly scrambles for the property of the husband. Grave considerations of public policy imperatively demand that such allowances should be kept within reasonable, and even within narrow limits. No case in this state has come under the observation of either member of the court, where allowances have been made in a divorce suit as liberal as were made in this case by the circuit court, and, believing that the allowances here are far in excess of what

they should have been, no alternative is left for us but to modify the orders appealed from, or rather to remand them with the following directions to the circuit court :

1st. To modify the order of May 15, 1871, so that it will require the defendant to pay the plaintiff $75 per month, payable monthly, from April 15th, 1871, until the judgment for permanent alimony shall be rendered, or until the further order of that court, for the support of the plaintiff and her children, and also to pay interest at seven per cent. on all such unpaid allowances from the time they respectively became due until the payment thereof.

2d. To so modify the order of June 21st, 1871, that it will require him to pay the plaintiff $450, and interest thereon at the same rate from the date of such order, on account of the expenses of the action.

The defendant must also be adjudged to pay the taxable costs of both appeals in this court, except attorneys' fees.

*By the Court.* — Ordered accordingly.