## CAMPBELL VS. CAMPBELL.

DIVORCE : ALIMONY. (1) *Statute relating to, liberally construed.* (2) *May be based on income.* (3) *Defined.* (4) *Statute construed.* (5) *Estate and income subsequently acquired, subject to subsequent judgment for.* (6) *Authority to revise judgment for, abides in court.*

CUSTODY OF CHILDREN. (7) *Judgment as to construed. Right of parent to visit child in custody of other.* (8) *Removal of child from jurisdiction of court not contempt, when.* (9) *Case stated. Further provision for alimony and support of child changed from annuity to gross sum.*

1. The statute of this state relating to divorce and alimony, etc., proceeds upon the natural duty of the husband to support the wife after as well as before divorce, and must be liberally construed to enforce that duty.

2. By the general rule recognized in divorce courts, alimony may always be based on the husband's income, at the time of the divorce and afterward.

3. Alimony is not itself an "estate," in the technical legal sense of that word, nor is it a "charge" upon the husband's estate (if he have one), but is a mere personal charge upon, or duty of, the husband, which the court will control and enforce against him from time to time, at discretion, compelling the payment thereof from his *income*, whether he have an *estate* or not. An inaccurate expression on this subject in *Donovan v. Donovan*, 20 Wis., 586, corrected.

Campbell vs. Campbell.

4. Sec. 24, ch. 111, R. S., provides that upon every divorce from the bond of matrimony, with a certain exception, and also upon every divorce from bed and board, " if the estate and property restored or awarded to the wife shall be insufficient for the suitable support and maintenance of herself and such children of the marriage as shall be committed to her care and custody, or if there be no such estate and property, the court may further adjudge to her such part of the personal estate of the husband, *and such alimony out of his estate,* as it shall deem just and reasonable, having regard to the ability of the husband," etc. *Held,* that in the phrase " alimony out of his estate, " the word " estate" includes income of whatever nature, as well as subsisting property.

5. The whole estate and income of the husband, whenever and however acquired, actually possessed and enjoyed by him at the time of a *subsequent judgment* for alimony, or for a division of estate (secs. 28, 29, ch. 111), are subject to such judgment.

6. The court which decrees a divorce cannot, by any form of judgment then rendered in reference to alimony, deprive itself of the authority given it by statute to revise such judgment.

7. A judgment of divorce, etc., gave the custody of a child of the parties (then about eight years old) to the mother, but directed that, until further order, the father should be permitted to see the child once each week at a specified *time,* but without specifying the *place.* *Held,* that the judgment *implied* that the child, being subject to the order of the court, should be kept *within its jurisdiction,* and also that it should be kept within the city which was then the common domicile of the parties.

8. But a subsequent removal of the child by the mother to a place without the jurisdiction of the court (especially under circumstances which seemed to render such removal necessary for the safety and comfort of the child and the mother) is *held* not to have been a contempt of court (there being no express prohibition of such removal in the judgment), nor a bar to the recovery by the mother of a subsequent judgment, revising in her favor the original judgment as to alimony.

9. The appellant (the former husband) has failed for many years to pay for the respondent and their child the small amount which he was required to pay by the original judgment, and is in arrears thereon about $1000; and he has meanwhile accumulated a property estimated at $13,500. The respondent seems to have been faithful and prudent in the care and education of the child (now about seventeen years old), and to have supported the latter and herself with great difficulty. There being no prospect of a reconciliation between the parties, this court is of the opinion that a division of estate between

them is more desirable than a further provision for alimony; and it adjudges that a part of the appellant's present estate to the value of $3,500 be awarded to the respondent for the support of herself and the child: the details of the judgment to be fixed by the circuit court.

10. The judgment thus provided for will be a *final* one between the parties.

APPEAL from the Circuit Court for *Milwaukee* County.

*Levi Hubbell* and *D. H. Johnson*, for the appellant, argued, *inter alia*, that sec. 24, ch. 111, R. S. 1858, contained all the authority of the court to adjudge alimony to the wife in any case; that it could only be *out of his estate*, not out of his future earnings, nor acquisitions. Questions of alimony are only discretionary within the statutory bound. The judgment for alimony must be based upon facts existing at the time of divorce and be carved out of the estate then owned. The power given by sec. 27, to "revise and alter *such* judgment and * * make any judgment respecting any of said matters which such *court might have made in the original action*" is only to revise upon facts which existed and might have been shown when judgment was entered. Citing *Bankston v. Bankston*, 27 Miss., 692; *Forrest v. Forrest*, 2 Bosw., 661; 6 Duer., 102; 25 N. Y., 505; *Peckford v. Peckford*, 1 Paige, 274; *Miller v. Miller*, 6 Johns. Ch., 92.

*L. S. Dixon*, for respondent, contended that the proceeding under sec. 27, ch. 111, is a graft upon the original action, and is clearly separable from it. After judgment of divorce establishes the right to alimony, the authority to compel its payment never ceases, so long as the parties continue to live. The obligations of the contract of marriage never cease during the life time of the parties. One of the obligations which the husband takes upon himself, when entering into the contract, is to maintain and support the wife according to his ability and condition in life. 2 Bishop on Mar. & Div., § 369. It is of the essence of this obligation, the wife being in no fault, that it is continuous for the life time of the wife, and that the husband must

continue to furnish aid and support, according to his means and the needs of the wife, in cohabitation, or out, where the separation has taken place by his own wrong or misconduct. And when the court adjudges that she may live separate, whether temporarily or permanently, for his wrong, his obligation to maintain her according to his means, present or future, remains unchanged. The statute was enacted to enforce this obligation throughout the future lives of the husband and wife, according to his increased or diminished faculties, or her wants. The husband by violating one part of his marriage contract can not escape the performance of all other parts. He can not take advantage of his own wrong. *Smith v. Smith*, 2 Phillim., 235; 2 Bish. on Mar. & Div., §§ 474, 481; *Albee v. Wyman*, 10 Gray, 222, 230; *Allen v. Allen*, 100 Mass., 376; *Burrows v. Purple*, 107 id., 433: *Graves v. Graves*, 108 id., 314.

RYAN, C. J. Judgment of divorce *a vinculo* between these parties was rendered several years ago, at the suit of the respondent, for the fault of the appellant; and gave the custody of the only surviving child of the marriage, still living, to the respondent until the further order of the court; provided for the payment of one dollar a week by the appellant to the respondent, for the support of the child, until further order; and provided for the payment of one hundred dollars a year, for three years, by the appellant to the respondent, for her own support. Before the late proceedings in the court below, the appellant had long made default in the payment of these allowances.

Some time since, he presented his petition to the court below to vacate so much of the judgment as provides for the allowances. The respondent thereupon presented her cross petition for the payment of them and for further allowance of alimony. On hearing these petitions, the court below gave judgment in favor of the respondent's and against the appellant's: ordering payment of arrearages of alimony under the former judgment,

and of three hundred and sixty dollars a year, until further order, by the appellant to the respondent, for her future alimony; and making no provision respecting the allowance for the child.

I. The appellant raises the question of the power of the court below, under the statute, in the circumstances of this case, to render such a judgment.

The question can hardly be considered an open one in this court. But as it has perhaps never been expressly passed upon, and as it was discussed with much ability on grounds new in this court and plausible, we have deemed it best to consider it at large.

The jurisdiction of divorce is a peculiar jurisdiction, because the marriage relation is a peculiar relation. By the law of marriage, the husband assumes the support of the wife and the support of their offspring in infancy, and is *prima facie* entitled to the custody of the latter.

These relations may all be disturbed by judgment of divorce. As a general rule of our law, divorce does not discharge the husband from the duty of supporting the wife and their infant children. But it may make new provision for the support of the wife necessary; and it may modify, suspend or supersede the husband's right to the custody of the infant children of the marriage, and make new provision for their support necessary.

The determination of these questions of support and of custody of children within the age of nurture, may be influenced, as it often is, by the cause of divorce; but it is not dependent on the right of divorce. And the adjudication of that right may leave these questions open for settlement.

Once granted, judgment of divorce, for obvious reasons of public policy, should, of all judgments, not be disturbed. Such is the policy of our law. Tay. Stats., 1430–31, § 12; id., 1635, § 10. Nothing that is said in *R—— v. R——,* 20 Wis., 331, conflicts with this view. Indeed it is to be regretted that public morality is not better guarded in this respect. *Crouch v. Crouch,*

Campbell vs. Campbell.

30 Wis., 667; *Freeman v. Freeman*, 31 id., 235. Divorce, to be decent, should at least be certain. And it is the general policy of the law that divorce *a vinculo* should be final, except upon reconciliation and remarriage.

The custody of children does not rest on the legal rights of the divorced parents. The fitness and circumstances of the parents, and the age, sex and circumstances of the children, enter largely into the question. And as most of these are essentially changeable, it is the wise policy of the law that the authority of courts over the question should survive the judgment of divorce and be continuing. *Helden v. Helden*, 7 Wis., 296; *Welch v. Welch*, 33 id., 534; *Re Goodenough*, 19 id., 274.

So the measure of support of the wife and of children committed to the care of the wife, depends largely on their need, age and other circumstances, and on the ability of the husband. These are all essentially changeable from time to time; and the support of the wife and children in the wife's care comes within the same policy of continuing authority, after divorce, to be exercised from time to time, in view of changes in the premises on which the measure of support rests.

This we understand to have been always the general policy of courts on these questions. See MacPherson's Infancy, ch. 11, 12, *passim; Wellesly v. Beaufort*, 2 Russ., 1; *People v. Mercein*, 8 Paige, 47; *De Blaquiere v. De Blaquiere*, 3 Hagg., 322; *Barrere v. Barrere*, 4 Johns. Ch., 187; *Daggett v. Daggett*, 5 Paige, 509; *Barber v. Barber*, 2 Pinney, 297. And for somewhat similar reasons, these questions of alimony and custody of children may, in the first instance, be included in the judgment of divorce or in a subsequent and separate judgment. *Forest v. Forest*, 6 Duer, 102; 3 Bosworth, 661; 25 N. Y., 501; *Cook v. Cook*, 1 Barb. Ch., 639; *Prescott v. Prescott*, 59 Me., 146; *Williams v. Williams*, 29 Wis., 517; 36 id., 362.

And this we understand to be the policy upon which our statute of divorce, R. S., ch. 111, was framed.

Sec. 19 authorizes the judgment of divorce, or a separate

judgment upon divorce, to provide for the custody and main-
tenance of infant children, having regard to their age and sex.
Sec. 20 authorizes a revision of such judgment of custody and
maintenance, and a new judgment on the subject, from time
to time, as the circumstances of the parents and the benefit of
the children may require.    *Welch v. Welch, supra.*

Sec. 24 authorizes the judgment of divorce, or a separate
judgment upon divorce, to provide for alimony to the wife for
the maintenance of herself and children committed to her cus-
tody, having regard to the ability of the husband and the cir-
cumstances of the parties.    Sec. 28 authorizes a revision of
such judgment of alimony, and such new judgment on the
subject, from time to time afterward, as the court might have
made originally.    *Helden v. Helden, Williams v. Williams, supra.*

All this seems very plain.    But it was argued for the appel-
lant, with much acuteness and ability, that the authority of
sec. 24 is expressly limited to adjudging to the wife " part of
the personal estate of the husband and alimony out of his
estate ;" that this power cannot go beyond the actual estate
possessed by the husband at the time of divorce, and cannot
touch income derived from his business or calling ; that there-
fore the authority of sec. 28 is also limited to the actual estate
of the husband, at the time of divorce, because his subsequent
estate would proceed from his income, which could not be
reached under either section ; and that this is the meaning of
sec. 28, in providing that the court may make a subsequent
judgment for alimony, which it might have made originally ;
that is, allowing alimony out of the estate possessed by the
husband at the time of divorce.

There was no design to adopt such a construction of sec. 24,
in *Donovan v. Donovan*, 20 Wis., 586, where the question was
different and turned on the construction of sec. 29.    The opin-
ion, speaking incidentally of sec. 24, aims to follow the lan-
guage of the section, without purpose or object to put a con-
struction upon it.

Campbell vs. Campbell.

We should be very unwilling to, adopt a construction of the statute which would exclude the wife, upon divorce, from all right to support from the income of the husband at the time of divorce or from his estate subsequently acquired. There may well be cases in which the actual estate of the husband, at the time of divorce, may be nominal only, and his income ample; cases in which the husband, without adequate estate or income, at the time of divorce, may afterwards acquire competent estate or income, or both. During coverture, the wife would be entitled to support out of these; and we do not understand that, upon divorce, she should lose her right. The statute clearly recognizes the continued claim of the wife to support from her husband, notwithstanding the divorce, except in case of her adultery. It is admitted that the statute provides for it, out of any estate possessed by the husband at the time of divorce; it is denied only as to his income. If the power to provide for the wife out of the husband's income were wanting in the statute, when his estate is inadequate and his income adequate, it would evidently be a *casus improvisus:* an oversight in the letter of the law, against its spirit and intention.

It was argued that a statute providing for the support of the wife by the husband, after divorce *a vinculis*, is a hard statute, which should be strictly construed. It was urged that in such a case the husband and wife are strangers; as merely so, as if they had not been married; and that calling upon a divorced husband to support his divorced wife, out of his subsequent estate, is calling upon him to support a person standing in no relation to him, having no moral claim upon him. We cannot assent to such a view, or even appear to sanction it by silence. Without considering the moral effect on society of the easy rule of divorce current in our day, we take occasion to say that there are things too sacred and too steadfast in nature, for any statute, or any judgment under a statute, to affect. Judgment of divorce can sever the legal bond of marriage, but it

cannot undo the natural relation which husband and wife bear to each other and to their children, cannot help but bear, and must bear always.  Statutes and judgments may control the future, but cannot cancel the past; may solve social, but cannot annul natural relations.  Marriage was before human law, and exists by higher and holier authority — the Divine Order, which we call the law of nature.  The law and the judgment of the law of the land may separate husband and wife and set them legally free; but law or judgment cannot obliterate their cohabitation in marriage, or the natural and indelible relation which cohabitation in marriage fixes on them forever.  It is shocking to the moral sense of mankind to reduce the natural correlation of man and woman in marriage, to a mere partnership of sex, absolutely effaced and undone by dissolution. The natural tie of marriage is beyond the jurisdiction of divorce; as essentially without the power of the law, as the natural relation of parent and child.  The power of the law, over either, is limited to legal relations.  It may attaint the heritable quality of blood, but cannot corrupt the natural blood. And the law which is impotent to estrange the mutual blood of husband and wife in the bodies of their children, cannot estrange the mutual bodies from whose union the children spring. The natural seal of affinity is upon them.  They can never again be mere strangers on earth.  The intercourse appearing in this record between these unhappy parties, during their nine years of legal alienation, proves that they are not strangers; that there is a tie between them, a privity of life, an affinity of being, as enduring in hate as in love, in disjunction as in cohabitation; which survives in their child, and would survive their child in themselves, as long as both should live ; which God will not and man cannot dissolve, until death shall part them.

*Naturam expellas furcâ ; tamen usque recurret,*
*Et mala perrumpet furtim fastidia victrix.*

Our statute of divorce recognizes the natural tie and conse-

quent obligation, and proceeds upon them, in providing for the claim of the wife, founded in marriage, to support from the husband, after divorce. We cannot regard it as a hard provision, but as a remedial and beneficent statute, for protection of natural claim founded on natural relation. And we shall not confine it to the narrow application contended for, against its spirit and intent, if the language used be fairly susceptible of larger and more liberal construction.

The first part of the clause of sec. 24 was, perhaps, intended to relate only to a convenient and proper division of personalty. But the difficulty lies in the word, estate, which is found in both branches of the clause. And it must be admitted that the word gives much color to the construction of the appellant's counsel. In a popular sense, estate has relation to condition in life, prosperity or adversity, and may include not only property, but also rank, office, income, social position and even character. In legal parlance, its meaning is more restricted, but is not always uniform. It was, anciently confined to land. "Estate signifieth such inheritance, freehold, term for years, tenancy by statute merchant, staple, elegit, or the like, as any man hath in lands or tenements." Co. Litt., 345 a. In more modern times, it may be restricted to personalty. *Woollam v. Kenworthy*, 9 Vesey, 137; *Sanderson v. Dobson*, 1 Welsby, H. & G., 141; *Archer v. Deneale*, 1 Peters, 585; *Godfrey v. Humphrey*, 18 Pick., 537; *Bullard v. Goffe*, 20 id., 252. In *Archer v. Deneale*, MARSHALL, C. J., says: "That the word "estate" is sufficiently comprehensive to embrace property of every description, and will charge lands with debts, if used with other words which indicate an intention to charge them, is a proposition which cannot be controverted. As little is it to be denied, that the word alone, if not used with an intent to subject the lands of the testator to the payment of his debts, cannot have that effect." In *Godfrey v. Humphrey*, SHAW, C. J., says: "Sometimes the word, estate, is enumerated with others, all descriptive of personal or chattel interests, so as to

exclude real estate." But as it is flexible, so it is generally very comprehensive. Lord HOLT says that "the word estate is *genus generalissimum,* and includes all things, real and personal." *Bridgewater v. Bolton,* 1 Salk., 236. POLLOCK, C. B., calls it "*nomen generalissimum,* comprehending everything real and personal over which the testator had a disposing power." *Sanderson v. Dobson, supra.* And all the cases cited, and many others, show that, like other words, the word *estate* is to be understood in the sense to which it appears to be applied. The last case cited expressly applies to it the maxim, *noscitur a sociis,* as all the cases do in effect. And the fixed, absolute sense of the word in the abstract gives way to the connection in which it is used. See also *Lambert v. Smith,* 1 Cranch, 347; *Boston v. Dedham,* 4 Metc., 178; *Jackson v. Robins,* 16 Johns., 537.

In *Donovan v. Donovan,* COLE, J., says that the court is authorized (by sec. 24) to allow the wife alimony, by making a decree in her favor for an annuity or gross sum chargeable on the husband's estate. As already remarked, the construction of sec. 24 was not in that case: and the language just quoted was used incidentally, aside from the question then under consideration; and, as is apt to happen in such cases, is inadvertent and inaccurate. An annuity charged on an estate, properly a rent charge, is itself an estate. Bissett on Est., 88. Dower is an estate. But alimony is not. It is an allowance for the nourishment of the wife, resting in discretion, variable and revocable. "Alimony is a maintenance afforded to the wife when the husband refuses to give it, or from his improper conduct compels her to separate from him. It is not a portion of his real estate to be assigned to her in fee simple, or to be sold at her pleasure, but a provision for her support, to continue during their joint lives, or so long as they live separate." *Wallingsford v. Wallingsford,* 6 Harris & J., 485; *Clark v Clark,* 6 Watts & S., 85; *Parsons v. Parsons,* 9 N. H., 309; *Purcell v. Purcell,* 4 Hening & M., 507; *Rogers v. Vines,* 6 Ired., 293.

Campbell vs. Campbell.

It is not even separate property of the wife, which she can charge for her debts. *Vandergucht v. De Blaquiere*, 8 Sim., 315. And even the payment of arrears of it rests in the discretion of the court granting it. *De Blaquiere v. De Blaquiere, supra; Allen v. Allen*, 100 Mass., 373.

And so, by all the authorities, alimony is not only not an estate, but is a mere personal duty of the husband, which courts will control and enforce, from time to time, in their discretion; in some sense a charge upon the husband personally, but in no sense a charge upon his estate, if he have one. And as a personal duty of the husband, and not a burthen or lien on his estate, it is enforced whether he have an actual estate or not; the measure of his estate going sometimes to the amount of alimony, but not at all to the allowance of alimony. See *Prince v. Prince, Bailey v. Bailey, Kirby v. Kirby, McCrocklin v. McCrocklin, infra*.

And so, in dealing with alimony, the English ecclesiastical courts do not look to the husband's estate, as such, but to what they denominate his *faculties*, that is, his means of paying alimony. And they hold his income, whether derived from estate or employment, as the proper source and basis of alimony. *Cooke v. Cooke*, 2 Phill., 40; *Brisco v. Brisco*, 2 Hagg., 199; *Higgs v. Higgs*, 3 id., 472; *Goodheim v. Goodheim*, 2 Swab. & Tr., 250. The same rule seems to be observed in chancery. *Vaughan v. Buck*, 3 E. L. & Eq., 135. And the same rule prevails in this country. *Miller v. Miller*, 6 Johns. Ch., 91; *Kirby v. Kirby*, 1 Paige, 261; *Lawrence v. Lawrence*, 3 id., 267; *Battey v. Battey*, 1 R. I., 212; *Prince v. Prince*, 1 Rich. Eq., 282; *Bailey v. Bailey*, 21 Grat., 43; *Bursler v. Bursler*, 5 Pick., 427; *Burrows v. Purple*, 107 Mass., 428; *McCrocklin v. McCrocklin*, 2 B. Mon., 370; *Foote v. Foote*, 22 Ill., 425.

A less estate is charged upon a greater estate. And provision for a less estate, as for a rent charge, implies a greater estate, as a fee, to charge the less estate upon. But provision for a personal charge or duty does not imply an estate, because

it is not a charge upon an estate, where there is one. And so provision for alimony does not require or imply an actual estate, real or personal, of the person who is to pay it. It implies income from some source, but does not imply the source of it. The estate intended in sec. 24 must be understood as an estate applicable to the payment of alimony. The words *estate* and *alimony* in the section are not only associated within the rule, *noscitur a sociis*, to be understood in a kindred sense; they are correlatives, dependent one on the other for effect, and should be understood in a corresponding sense. We are not considering division of estate, but alimony proper. The correlative estate must be intended as an estate available to the payment of the correlative alimony. This seems to disregard actual estate not yielding income, and implies income however accruing, whether from estate proper, or employment, or both. This view is strongly upheld by the concurrent direction to have regard to the ability of the husband. The court shall have regard, not to his estate only, but to his ability: that is, his ability to pay by way of annuity or income. The word, ability, here plainly bears the sense of the ecclesiastical term, faculties. For ability to pay by way of annuity does not rest on estate in the sense of investment, but on estate in the sense of income; ability to pay income to another, depends on the income of the person to pay it. This view does not tend to impair the power of the court to force the husband to convert unproductive property into money or securities available to pay alimony. And so the word, estate, in the section, out of which the husband is to pay alimony and to have the ability to pay it, seems to be equivalent to the faculties of the ecclesiastical courts, and to include income of whatever nature, as well as subsisting property. The word is *genus generalissimum*, comprehending all things applicable to the use to which it is put. And we think that we have ample authority in the cases for bending the word a little from its black letter strictness to correspond with its context and to mean what it was plainly in-

tended to mean by the legislature.     *Verba strictœ significationis ad latam extendi possunt, si subsit ratio.*

We have therefore no difficulty in holding, on principle and authority, that alimony may always be based on the husband's income, at the time of divorce and afterward.     And it seems to follow that the subsequent estate of the husband, the investment or growth of his income, is subject to subsequent judgments under secs. 28 and 29.     This we understand, as we have already explained, to be the object and policy of sec. 28.  And we should have little difficulty in holding all estate and income of the husband, whenever and however acquired, actually possessed and enjoyed by him at the time of a subsequent judgment for alimony, or a subsequent judgment for division of estate, as subject to such subsequent judgment, even if there were not a great preponderance of authority that the subsequent acquisitions of property by the husband are so subject. But our view is sustained by the great weight of authority.

The learned counsel for the appellant cited against this position, *Chenault v. Chenault,* 5 Sneed, 249, in which the question does not seem to have been much considered, and which goes upon the ground that, upon divorce *a vinculo,* a division of estate, not alimony proper, should always be the provision for the wife; *Bankston v. Bankston,* 27 Miss., 692, which does not appear to go beyond a very positive but mere *dictum* on the point; and *Feigley v. Feigley,* 7 Md., 537, where it is expressly decided, certainly against weight of authority, that where there is no estate there can be no alimony; but which does not appear to have any direct bearing on the liability of subsequently acquired estate.

On the other hand there are many well considered cases holding the husband's subsequent acquisition liable.  *Ahrenfeldt v. Ahrenfeldt,* 4 Sandf. Ch., 493 ; *Forrest v. Forrest,* 6 Duer, 102, and 3 Bosw., 661 ; *Graves v. Graves,* 108 Mass., 314; *Cox v. Cox,* 20 Ohio St., 439; *Plaster v. Plaster,* 47 Ill., 294; *Fisher v. Fisher,* 32 Iowa, 20.     And there are other cases going far to

sanction the doctrine. *Miller v. Miller, supra*; *Forrest v. Forrest,* 25 N. Y., 501 ; *Cox v. Cox,* 19 Ohio St., 502 ; *Allen v. Allen, supra*; *McKarracher v. McKarracher,* 3 Yeates, 56 ; *Foote v. Foote,* 22 Ill., 425 ; *Barber v. Barber, supra.*

It was objected to the authority of some of the cases cited, that they relate to alimony upon divorce *a mensa et thoro.* Notwithstanding the attempt of some judges to draw a distinction between the right to alimony in the two cases, we are unable, for reasons already apparent, to see any ground in principle for such a distinction.    Whether divorce be *a mensa or a vinculo,* except in excepted cases, the duty equally remains with the husband to support the wife.    The nature of the divorce may sometimes well go to the measure of alimony, but not to the right.    We do not think that there ought to be any difference in the right, and certainly our statute makes none.

Section 28 goes upon the fitness of a new judgment in the altered circumstances of the parties.    And the true bearing on the question of alimony or division of estate, of the authority to make a new judgment which the court might have made originally, is to license the court to provide *de novo* for the support of the wife and children committed to her with reference to all changes in the circumstances of the parties.    For, if the power were limited to the estate of the husband as it stood at the time of divorce, it would not only exclude new value as well as new estate and refer present support to old values of old estate, but would leave the court powerless to make any new judgment on the subject, if it should happen that the husband's estate at the time of divorce had ceased to belong to him.    This looks like a *reductio ad absurdum.*

It was contended, in this connection, that the provision for alimony in this case in the judgment of divorce, was intended by the court below to be final.    However that may be, it is very certain that the court below had not power to make it final, and could not divest itself of authority to revise it.

II. It is claimed for the appellant that the respondent was

guilty of a wanton violation of one of the provisions of the judgment of divorce, which is equivalent to a contempt of court, and should have been a bar to her recovery of the present judgment.

At the time of the divorce, the parties were domiciled in Milwaukee. The judgment of divorce, having given the custody of the child, then some eight years old, to the respondent, provided that the appellant should be permitted to see the child every Sunday afternoon, until further order. The judgment contains no provision forbidding the respondent to remove the child beyond the jurisdiction of the court, or specifying where the appellant should be permitted to visit her. Under the statute, the child was subject to the *quasi* guardianship of the court ; and the judgment implied that the custody of the child, being subject to the order of the court, should be within the jurisdiction of the court. It would have been better, *propter simplicitatem laicorum*, that the judgment should have expressly forbidden the removal of the child beyond the jurisdiction ; and the fault in the removal of the child may be said to be shared in this by the court below. And so it was fairly implied by the judgment, that the appellant should have access to the child for his weekly visit, in the common domicile of the parties. But in this also the judgment itself was in fault. In such a case, no reliance should be placed on implications. *Id magis certum est quod de semetipso est certum.*

The respondent is evidently a well informed woman. And we think that she must have understood that her custody of the child was subject to the order of the court, and that therefore the child should be kept subject to such order. But she may have thought that her duty in this respect would be fulfilled by restoring the child to the jurisdiction, when so ordered by the court. And so she must have understood that the appellant's visits to his child, provided for in the judgment, were to be made in Milwaukee. But her intense asperity to him, which is accounted for and palliated, if not justified, in the

opinion of the lamented Judge SMITH in granting the divorce, seems to have blinded her to the rights and convenience of the appellant, whom with flippant bitterness she invites to pay his weekly visits in Chicago.

On the other hand, the appellant appears to have been penurious towards the respondent and their child. The child was sick, perhaps dangerously so. Mother and child seemed not unlikely to come to want. The comfort and health of the child seem to have needed a better home and better care than she had in Milwaukee. The mother was without immediate prospect there of proper provision for herself or child. She had a sister in Chicago, to whom she fled with her child for refuge, where she and the child appear to have done well. She may have saved the child's life by a removal which certainly was not sanctioned by the judgment. We dare not say that she was wrong.

It looked like contempt of court; but it was not, for want of prohibitory words in the judgment. Had the appellant seen fit to apply to the court below to order the child restored to its jurisdiction, and the court below had made the order, as seems likely, she must have brought the child back or been guilty of strict contempt. But the appellant made no such motion. It is now said that he was indifferent. We cannot say so. He is perhaps entitled to credit for having sacrificed his own feelings to the welfare of his child.

Be that as it may, it is very certain that the respondent was not guilty of technical contempt of court.

The respondent was placed in very trying circumstances; and, in all except her bitter and contemptuous disregard of the appellant, she appears to have acted with prudence and propriety. We must say that the necessities which pressed sorely upon her, and which she now pathetically pleads for her conduct, go very far to redeem her removal of the child from the jurisdiction from the imputation of wanton disregard of her duty to the court below and to the appellant.

And whatever may have been the view of the late excellent and able judge of the court below, of which however he made no record, we cannot hold the conduct of the respondent in taking the child to Chicago as any bar, legal or moral, to her recovery of the judgment now before us.

III. The controversy between these parties is old and bitter. We do not propose to review their mutual attacks and defenses. We propose to say as little as we may, to dispose of the case intelligently.

The parties appear to be quite intelligent, and, in all save their intense bitterness to each other, quite respectable. The respondent seems to have erred from excess of feeling; the appellant from excess of thrift. Reconciliation between them seems impossible. And all the facts appearing in the record approve the wisdom of counsel on both sides in preferring a division of estate between the parties to an allowance of alimony, with its recurring opportunities for disagreement and litigation.

The respondent appears to have been faithful and prudent in the care and education of the child, now some seventeen years old. She appears to have struggled, in her desolate circumstances, with energy and patience, to win a livelihood for herself and her child, and to have barely succeeded in doing it, with no help from the appellant worthy of notice.

The appellant seems to have thriven, since he escaped from the expense of maintaining the respondent and their child. His inexpensive life and his failure to pay even the pittance allowed by the judgment of divorce, no doubt aided him in acquiring and keeping his present estate, which we take to be of some $13,500 and upwards.

At the time of the judgment of divorce, he was comparatively poor, and perhaps the allowances then made were as much as he could well pay; but they were most surely inadequate to the proper support of the respondent and their child, with all the aid which could well be looked for from the re-

spondent herself.   With his increasing income, they ought long ago to have been increased, instead of being stopped by the appellant's refusal to pay them.   He had some excuse for this, but we cannot say adequate excuse, in the removal of his child.   If he really loved her so much as to miss her so sorely, he should surely have provided for her, wherever she was, at least to the scant measure of the judgment.

We take his present estate to be in part owing to the economy of the divorce to him.   And we hold that the respondent, with their child, has a strong title to share it, which she has not forfeited, to reward her for her struggles and sufferings since the divorce, and to make the burthens of the future easier to her.

In view of all the facts, and of the rate of allowance heretofore made by this court in somewhat similar cases, we have concluded to award to the respondent $3,500 out of the appellant's estate, in lieu of all claims for herself and for the child. Over $1,000 of this amount appears to be now due for principal and interest on foot of the original judgment; and we consider $2,500 added to that a fair division of estate between the parties.   We have fixed the amount with reference also to the fact of the respondent's expenses in the litigation, into which she was almost driven by the appellant.

This judgment will be final between the parties.   *Donovan v. Donovan, Burrows v. Purple, Plaster v. Plaster, supra.*

We leave it to the court below to fix the details of the judgment according to the interest and convenience of the parties.

The appellant must of course pay all costs in this court and in the court below.

*By the Court.* — The judgment of the court below is modified according to this opinion, and the cause remitted for proceedings accordingly.