## Cook vs. Cook, imp.

*November 6 — November 21, 1882.*

DIVORCE. *Effect of judgment of divorce rendered in another state against a resident of this.*

Although marriage is a *status*, and every state has the right to fix, regulate and control the same as to every person within its jurisdiction, even though one of the parties may at the time actually reside in another state, yet a judgment of divorce granted in another state, under statutes making jurisdiction dependent entirely upon the residence there of the party applying for a divorce, at the suit of a husband against a wife who resided in this state, and who was not personally served with notice and did not appear in the action, but was ignorant of its pendency until after the judgment was rendered, is not a bar to a subsequent action by such wife in this state for a divorce, alimony, allowance and a division of the property of such husband situated within this state, especially where such foreign judgment was based upon an alleged cause of action which was false in fact.

[TAYLOR, J., is of the opinion that a judgment of divorce rendered in another state, if recognized as valid, must be held to destroy the marriage relation as to both parties in all places; but that when a divorce has been granted, without notice, in a foreign jurisdiction, the wife at the time living in this state and there being property here, owned by the husband at the time of the divorce, in which the wife has inchoate interests which have not been secured to her by the judgment of divorce, and no other provision having been made for her just alimony, a court of equity in this state may, upon the ground of such foreign divorce, entertain an action for alimony out of such property.]

| | |
|---|---|
| 56 | 195 |
| 81 | 250 |
| 56 | 195 |
| 82 | 350 |
| 56 | 195 |
| 90 | 276 |
| 56 | 195 |
| o99 | 346 |
| 56 | 195 |
| 102 | 672 |
| 56 | 195 |
| 112 | 318 |
| 56 | 195 |
| 59 LRA 167n |
| 59 LRA 175n |

APPEAL from the Circuit Court for *Dane* County.

Action to set aside, on the ground of fraud, a judgment of divorce in favor of the defendant *Cook*, rendered in the circuit court for Shiawassee county, Michigan, and for a divorce and alimony. The defendant Brewer was made a party on the ground that a lease and mortgage executed to him by the principal defendant were in fraud of plaintiff's rights, and the prayer of the complaint is, among other things, that such

lease and mortgage be set aside and declared void.    The substance of the findings of the circuit court is thus stated by Mr. Justice Cassoday:

"The circuit court found, in effect, among other things, that the parties were married in New York in 1841, and continued to reside there as husband and wife until 1867, when they came to Rutland, Dane county, Wisconsin, where they continued to reside as husband and wife upon the 100 acres of land in question, belonging to the defendant *William Cook*, until December, 1874, when the plaintiff, *Ellen C. Cook*, without objection from *William*, went to Chicago and there remained for one year, but returned to her former home in Rutland more than a year prior to the commencement of this action, while *William* continued to reside on the farm in Rutland until December, 1875, when he left this state and went to and became a resident of Shiawassee county, Michigan, where he has since continued to reside, upon a farm purchased by him in November, 1876, and which has since been occupied by him; that as the fruit of that marriage they had eight children, only three of whom are living, the youngest being twenty-three years of age; that February 9, 1880, *William* commenced an action for divorce against *Ellen*, in the circuit court for Shiawassee county, Michigan, on the sole ground that *Ellen* had deserted him in December, 1874, while he was residing here, and had continued such desertion up to that time; that *Ellen* was not a resident of Michigan, February 9, 1880, nor at any time, but was a resident of Wisconsin, and has continued to be such; that service was made in that suit upon *Ellen* by publication in conformity with the laws of Michigan; that *Ellen* being in default in said suit, judgment of divorce was made and entered therein, June 28, 1880, in favor of *William* and against *Ellen*, dissolving said marriage, on the ground that *Ellen* had been guilty of such desertion; that the ground upon which that divorce was granted was not true; that

*Ellen* did not learn of the commencement of said divorce suit, nor the pendency thereof, nor of said judgment, until September, 1880; that the defendants seek to make said divorce a bar to this action; that in December, 1875, at Rutland aforesaid, where *Ellen* and *William were then living together as husband and wife,* the said *William,* disregarding his duties and obligations as the husband of *Ellen,* did wilfully, and without cause or provocation, desert, leave, and abandon *Ellen,* and has since said time remained absent from *Ellen* and his family, and continued such desertion of *Ellen,* and now is wilfully absent from *Ellen* and their family; that forty acres of the land in question was the homestead of *William* and *Ellen* from 1867 to some time in December, 1875, since which time *Ellen* and their family have continued to reside thereon. And as conclusions of law, the court among other things found, in effect, that the Michigan divorce was valid for the purpose of dissolving the marriage contract, notwithstanding the cause assigned was not true, but that it was no bar to this action for divorce for the desertion alleged and found, and a division of property situated here, over which the Michigan court had no jurisdiction, and that *Ellen* is entitled to judgment accordingly; that *Ellen* has no homestead rights as the wife of *William* in any of the lands described in the complaint; that the lease from *William* to the defendant Brewer be set aside, and Brewer perpetually enjoined from further prosecuting his action for possession thereunder; and that the mortgage on the lands in question, given by *William* to Brewer, should stand as a valid subsisting lien, and that the title of the land be passed to *Ellen* by the judgment herein, subject to the payment of the mortgage, and that none of the parties recover costs."

The defendant *William A. Cook* appealed from so much of the judgment entered in accordance with such findings, as decreed the dissolution of the marriage relation and a division of his property, between the plaintiff and himself.

Cook vs. Cook, imp.

*Frederic K. Conover*, as attorney, and *J. H. Carpenter*, of counsel, for the appellant, contended, *inter alia*, that the judgment of the Michigan court that the respondent had deserted the appellant in December, 1874, was *conclusive* of that fact, and all findings in this action inconsistent therewith were erroneous. *Res judicata pro veritate accipitur.* Broom's Leg. Max., 328 *et seq.;* Freeman on Judgments, ch. 12; *Pierce v. Kneeland*, 9 Wis., 30, 31; *Kalisch v. Kalisch*, id., 529; *Danaher v. Prentiss*, 22 id., 317; *Shafer v. Bushnell*, 24 id., 372; *Amory v Amory*, 26 id., 152, 162. The marriage having been dissolved and the parties divorced by the judgment in Michigan, it was impossible for the court below *again* to dissolve such marriage and *again* to divorce the parties. The evidence and the findings being conclusive as to the fact that the parties were not husband and wife, the complaint should have been dismissed.

*H. W. Chynoweth*, for the respondent:

Admitting that the Michigan judgment was valid, the authorities sustain the judgment in this case. Rorer on Interstate Law, 179, 180; *Wright v. Wright*, 24 Mich., 180. An *ex parte* divorce is entitled to faith and credit in the forum of a state other than that in which it was granted only upon the ground of comity between such states. See *Shafer v. Bushnell*, 24 Wis., 377. Judgments of this kind do not come within the provisions of sec. 1, art. IV of the federal constitution. That section applies only to judgments obtained after due personal service of process upon the defendant within the jurisdiction of the court rendering the judgment. *D'Arcy v. Ketchum*, 11 How., 165; *Pennoyer v. Neff*, 95 U. S., 714. Under the laws of Michigan (subd. 6, sec. 4736, Comp. Laws of Mich., 1871) an *ex parte* divorce granted by a court of this state against a resident of Michigan would be no bar to a subsequent divorce and alimony by a court of Michigan in favor of the resident of that state. Our courts, therefore, applying the reasoning of Mr. Justice

Cole in *Shafer v. Bushnell, supra*, should refuse to give effect to the Michigan judgment further than to hold that it snaps the marriage tie so far as the citizen of Michigan is concerned, but is no impediment to divorce and alimony here on the part or in behalf of the citizen of Wisconsin. See *Stilphen v. Stilphen*, 58 Me., 508; *Henderson v. Henderson*, 64 id., 419; *Sheafe v. Sheafe*, 24 N. H., 564. Admitting that the Michigan judgment is binding upon both parties so far as the marriage relation is concerned, yet as an adjudication that the respondent has violated her marriage vows — that she has deserted the appellant — it is of no force or effect whatever. To protect her property rights the court will look into the facts and find that she is the injured party. The question of alimony was not involved in or decided by the Michigan suit. The Michigan court had no jurisdiction whatever to make an allowance for alimony that would be binding. How can it be said that the judgment of a court which confessedly had no jurisdiction as to a particular subject matter is a bar to a judgment of another court which confessedly has jurisdiction of such subject matter? To hold that this judgment is a bar is, in effect, to grant the state of Michigan and its courts the power to divest citizens of this state of property rights to which they are entitled here, without a day in court. The circuit court had jurisdiction of the subject matter of a divorce suit and alimony between these parties, and had jurisdiction of the parties. It was proper for it to take jurisdiction of this cause, and, as a court of equity, having taken jurisdiction for one purpose, it might retain the cause for a final determination of the rights of the parties. *Akerly v. Vilas*, 15 Wis., 440; *Sterl v. Sterl*, 2 Monthly Jur., 561. See, also, *Dewees v. Dewees*, 55 Miss., 315; *Cox v. Cox*, 19 Ohio St., 502; *Mansfield v. McIntyre*, 10 Ohio, 27. Under the statutes of Michigan the respondent cannot procure a hearing in the divorce suit before the Michigan court. In divorce cases, unlike others, the judgment is

final and the nonresident defendant cannot, after judgment, appear and be accorded the right to be heard. 2 Comp. Laws of Mich., 1871, sec. 5129. The respondent is wholly without a remedy except through the intervention of the courts of this state.

But the Michigan judgment is utterly void in this state, for the reason that the respondent had no notice of the pendency of the suit until after it was terminated, although the appellant knew perfectly well where notice could reach her, and where she was at the time. *Doughty v. Doughty*, 27 N. J. Eq., 315; *S. C.*, 28 id., 581; Wharton on Confl. of Laws, secs. 206–209. This doctrine is recognized in *Ditson v. Ditson*, 4 R. I., 87, and *Harding v. Alden*, 9 Me., 140; 2 Bishop on M. & D., sec. 158. See, also, *Pennoyer v. Neff*, 95 U. S., 714; *Vischer v. Vischer*, 12 Barb., 640; *McGiffert v. McGiffert*, 31 id., 70. A publication in a local newspaper presents to an absent or nonresident defendant no opportunity to be heard. If a prescription of a publication in a newspaper for six weeks is good, prescription of a publication for one day is likewise good. Without something besides publication, there is, in fact, no notice at all. If a judicial divorce can be upheld upon service of summons by publication only, such divorce could be sustained when granted without any service of summons whatever.

For the appellant, in reply, it was argued that the Michigan judgment was valid. The proceedings were in strict compliance with the laws of that state, and it is expressly found that the appellant prosecuted the action there "in good faith and without fraud, believing that he had the cause for a divorce therein alleged." The validity of such judgments was settled in this state as early as 1852, and the decision then made has ever since been adhered to. *Manley v. Manley*, 3 Pin., 390; *Hubbell v. Hubbell*, 3 Wis., 662; *Gleason v. Gleason*, 4 id., 64; *Shafer v. Bushnell*, 24 id., 372. See, also, Cooley's Con. Lim. (4th ed.), 501–508; 2 Bishop on

M. & D., secs. 155 *et seq.; Cheever v. Wilson*, 9 Wall., 108. The statute under which the first three cases above cited were decided was sec. 18, ch. 84, R. S. 1849. It provided for the service of process or notice upon nonresidents, by publication, but did not provide for any mailing of the same. It was in no material respect different from the statute of Michigan, under which notice of the action there was given to the respondent. And the Michigan statute is substantially the same as the statutes upon this subject in Arkansas, New Jersey, Connecticut, Delaware, Florida, Georgia, Iowa, Kansas, Maine, Maryland, Massachusetts, Missouri and other states. An examination of the case of *Doughty v. Doughty*, 27 N. J. Eq., 315, and 28 id., 581, cited by the respondent, will show: (1) That the judgment was based upon the ground that "the proof in demonstration of the *fraud* [in obtaining the divorce in Illinois] was so clear and strong as to render it certain that the plaintiff knew, at the time he brought his suit, he had no right of action, and was without expectation of obtaining a judgment unless he was successful in depriving the defendant of an opportunity of making a defense" (27 N. J. Eq., 320), and that "the entire scheme was a fraud" (28 id., 588). (2) That the requirements of the statutes of Illinois were not complied with in obtaining the divorce there. The plaintiff knew the defendant's residence, but no notice of the proceeding was mailed to her, as the statute required. See R. S. of Illinois, 1877 (Hurd), p. 185, secs. 12, 13; R. S. of Illinois, 1845, p. 94, secs. 8, 9. The remarks in the opinions upon which the respondent relies were, therefore, entirely unnecessary to the determination of the case, and must be regarded as mere *obiter dicta*. Such remarks are in conflict with the decisions of this court, above cited; and they come with little grace from the court of a state whose statutes require no mailing of notice to a nonresident defendant, and a publication of but four weeks. See R. S. of N. J., 1874–5, p. 156, sec. 13; Revision of N.

J. (1709–1877), p. 316, sec. 13.    The·same court had just de-
cided that in a proceeding *in rem* no notice whatever to non-
residents was necessary.    *McCahill v. E. L. A. Society*, 26
N. J. Eq., 532.

Being valid, the Michigan judgment is a complete bar to
this action.    The cases of *Wright v. Wright*, 24 Mich., 180,
and *Stilphen v. Stilphen*, 58 Me., 508, depend upon special
statutes, and are therefore inapplicable.    It is well settled
that our courts have no powers in divorce cases except such
as are expressly conferred upon them by statute.    *Barker v.
Dayton*, 28 Wis., 367; *Hopkins v. Hopkins*, 39 id., 171;
*Bacon v. Bacon*, 43 id., 202.    Divorces can be granted, there-
fore, only for the causes enumerated in sec. 2356, R. S.    If
the Michigan judgment dissolved the marriage relation
between the parties on the 28th of June, 1880, it is hard to
see how the appellant, being no longer the husband of the
respondent, could be guilty of a wilful desertion of her dur-
ing the time between June 28, 1880, and the commence-
ment of this action in December, 1880.    This absurdity is
involved in the findings and judgment of the court below,
as well as the absurdity of holding that although the appel-
lant believed his wife had deserted him in December, 1874,
and continued such desertion until the date of the Michigan
judgment, yet he *wilfully* deserted her in December, 1875.
That the marriage once dissolved could not be dissolved
again, see *Cooper v. Cooper*, 7 Ohio, 594.    That a judgment
for alimony could not be granted, without also granting a
judgment of divorce, see 2 Bishop on M. & D., sec. 356, and
cases cited; *Damon v. Damon*, 28 Wis., 514; *Ball v. Mont-
gomery*, 2 Vesey, Jr., 195; *Yule v. Yule*, 2 Stockt., 144;
*Shannon v. Shannon*, 2 Gray, 285; *Lawson v. Shotwell*, 27
Miss., 633; *Wilde v. Wilde*, 36 Iowa, 319.    Cases holding
otherwise, including those in Ohio cited by the respondent,
depend upon special statutes authorizing independent pro-
ceedings for alimony.    It is not true that the Michigan

court had no jurisdiction to make an allowance for alimony. It had, by the laws of that state, complete jurisdiction of the subject matter of divorce and power to grant alimony upon every divorce. It had, also, jurisdiction of the person of the husband and might have rendered a judgment requiring him to pay alimony. Such judgment would be personally binding on him. Of course a court cannot render a personal judgment for alimony binding upon a nonresident husband who has not appeared; but this was not such a case. If it should be thought best to provide for independent proceedings for alimony, or to authorize the granting of a divorce for such causes as those for which the divorce was granted in *Wright v. Wright* and *Stilphen v. Stilphen, supra,* the *legislature,* but not the courts, can so provide. The question now to be determined is not what the law should be, but what it is. *Shannon v. Shannon,* 2 Gray, 285; *Crouch v. Crouch,* 30 Wis., 667; 2 Bishop on M. & D., sec. 156.

CASSODAY, J. It is urged by the learned counsel for the defendant that the Michigan divorce is a complete bar to this action for any and all purposes. The question is important, and we are not aware that it has ever received the consideration of this court. Certain questions have, however, been determined, which may be indirectly involved in the proposition. It has frequently been held that courts in this country possess no power in actions for divorce, except such as are conferred by statute. *Barker v. Dayton,* 28 Wis., 367; *Hopkins v. Hopkins,* 39 Wis., 167; *Bacon v. Bacon,* 43 Wis., 197. Under our statute several questions have been determined by this court.

In *Damon v. Damon,* 28 Wis., 514, it was held that a claim for alimony is not the subject matter of a separate suit, but is only ancillary to, or an incident of, an action for a divorce. In that case both parties were residents of Wisconsin.

In *Campbell v. Campbell*, 37 Wis., 206, both parties resided in this state at the time the judgment of divorce *a vinculo* was rendered. Several years after the judgment each party presented petitions respecting the alimony adjudged. It was held, in effect, that the court had continuing authority, after the divorce, to make changes as to the alimony allowed, and the custody of the children decreed, depending largely on the need, age, and other circumstances of the wife and children, and the ability of the husband. The late chief justice there said: "And for somewhat similar reasons, these questions of alimony and custody of children may, in the first instance, be included in the judgment of divorce, or in a subsequent and separate judgment." Similar ground was taken in *Hopkins v. Hopkins*, 40 Wis., 462, where it was held that a judgment for partition or division of the real and personal property of the husband between the parties to a divorce suit is final; but a judgment for alimony, whether payable annually or in a gross sum, may be revised by the court from time to time on the petition of either party. These positions are enforced in *Bacon v. Bacon*, 43 Wis., 197.

This court has held, under our statutes, that a resident plaintiff may maintain an action for divorce in the courts of this state, notwithstanding the marriage was solemnized abroad, and the cause for divorce occurred in another state, and the defendant has never been a resident of this state, nor served with process therein. *Manley v. Manley*, 3 Pin., 390; *Hubbell v. Hubbell*, 3 Wis., 662; *Gleason v. Gleason*, 4 Wis., 64.

In *Dutcher v. Dutcher*, 39 Wis., 651, it was held that a nonresident plaintiff could not maintain an action for divorce in the courts of this state; and this is the rule even when the marriage has been solemnized in this state, and the cause for the divorce occurred here. In that case the late chief justice took occasion to say: "Wisely or unwisely, it is

the policy of the statute to rest jurisdiction of divorce here upon the residence of the plaintiff alone." Page 657. " Doubtless, for certain purposes, the domicile of the husband is the domicile of the wife. That rule, however, goes upon the unity of husband and wife; and very generally, if not always, implies continuing, though temporarily interrupted, cohabitation. It excludes, or should exclude, permanent separation. Permanent separation implies separate domiciles of husband and wife. If the rule were to be applied to cases of desertion, it would imply something like an absurdity. The weight of authority is against the application of the rule as applied to cases of divorce when the parties are actually living in different jurisdictions. . . . The question cannot be considered an open one in this court." Page 659. The case, as well as the statute, excepted actions " for adultery alleged to have been committed while the plaintiff was a resident of this state." Sec. 2359, R. S. By the late revision, a wife, whose husband has deserted her in another jurisdiction and become a resident of this state, is enabled to follow him into the courts of this state, even though she is not a resident. Sec. 2359, R. S. But that is immaterial here, since it is the husband, and not the wife, who is the nonresident. The Michigan statute, like ours, provided that " no divorce shall be granted unless the party exhibiting the petition or bill of complaint therefor shall have resided in this [that] state one year immediately preceding the time of exhibiting such petition or bill." Sec. 9, ch. 170, Comp. Laws, 1871.

From these decisions and this statute it is clearly established that the courts of Wisconsin had no jurisdiction to grant a divorce at the suit of *William* while he was a resident of Michigan; and the courts of Michigan had no jurisdiction to grant a divorce at the suit of *Ellen* while she was a resident of Wisconsin. And yet all the while the courts of each had jurisdiction to grant a divorce at the suit of the

one residing in such jurisdiction. This restricting, or rather determining, each jurisdiction by its own citizenship suggests the query: Suppose each had commenced an action for divorce on the ground of desertion at the same moment of time, he in a court of Michigan and she in a court of Wisconsin, and each had obtained service by publication in the same way, and each prosecuted such suit to judgment at the same moment of time, which would have the most binding force as to the *status* of the respective parties, and the property purporting to be affected by it? Would both be void, or both be valid? Or would one be valid and the other void? and if so, which would be valid and which void? and upon what ground would the distinction rest? Was *Ellen's* only remedy to appear as defendant in a case of which she had no knowledge, in a court which could not take jurisdiction if she appeared as plaintiff, and which could, in no event, give title to the land which she here seeks to have adjudicated?

These questions go to the very vitals of the proposition under discussion. In their determination it is necessary to consider the purpose, object, and policy of the statutes, and the effect and incidents of a divorce. In *Campbell v. Campbell, supra*, it was aptly said "that the jurisdiction of divorce is a peculiar jurisdiction, because the marriage relation is a peculiar relation;" and in *Dutcher v. Dutcher, supra*, it was added "that the statute of divorce is a peculiar statute." In the latter case the late chief justice said: "The policy of the statute in requiring a year's residence is obviously to secure good faith in the residence of parties coming from without the state and applying for divorce here. . . . No mere pretense of residence, no passing visit, no temporary presence, no assumption of residence here *pro hac vice*, nothing short of actual abode here with intention of permanent residence, will fill the letter or spirit of the statute. . . . *The legislature was legislating for the citizens of this state, not for others.*"

In *Smith v. Smith*, 13 Gray, 210, SHAW, C. J., in pronouncing a foreign divorce, set up by way of defense, void, said: "If this were a mere private action or suit in which the personal rights of the parties alone were concerned, there would be strong reason for applying the doctrine of estoppel to the act of the husband in resisting the present motion of the wife. But a suit for divorce is of a very different character; it is one in which the public have an interest, and in the conduct and result of which the best interests of society are concerned. . . . Marriage is undoubtedly a contract, but it is a contract sanctioned by law, controlled by considerations of public policy vital to the order and harmony of social life, and in its nature indissoluble, except by violations of duty on the one part, to be taken advantage of in a special manner, provided by law, on the other. Neither party can do any act by way of release, grant, stipulation, or agreement, to dissolve such contract; and yet by any of these acts one could estop himself in a matter of private right."

Marriage is not only a contract, but, when consummated, creates the most peculiar and solemn of all domestic relations. It comes into existence in pursuance of a contract, but when formed it involves rights and duties flowing from a source transcendently above any and all contracts which the parties are capable of making. It is akin to the tender relation between parent and child, and has a peculiar sanctity not to be expressed in any commercial phraseology like the word "contract." Its obligations can be enforced, and its violations redressed, in ways unknown to the law of contracts. It is shielded from unholy intrusion by severe penalties, enacted in laws both human and divine. It unites two persons for life by giving to each a new *status* before the law, as to society, each other, and the property of each. This *status* not only involves the well-being of the parties thus united, but the good of society and the state. It is, therefore, a proper subject of legislation. It may, from public considera-

tions, be fixed, regulated, and controlled by law. In this country it is not a matter of national, but state legislation. But, as already observed, this court has held that the legislation of this state is for the citizens of this state, and not for the citizens of other states. Undoubtedly each state has the power to absolutely fix, regulate and control such *status* as to each and all of its own citizens. Of course, every other state has the same power. From this it logically follows that no one state has the power to fix, regulate, or control such *status* as to the citizens of any other state. It is true, when such *status* is once rightfully fixed by a state in which the person to whom it attaches resides, it necessarily follows the person, even though he goes into another state, and it continues with him until refixed by another rightful jurisdiction in which he has subsequently become a resident. The old theory was that in law the husband and wife were but one person, and that the husband was that one. But that theory, like many others, has been compelled to yield to the actual facts. Though united in wedlock, yet, nevertheless, the union is of two different persons, each having independent volition and individuality. As already observed, this court has held that while for certain purposes the domicile of the husband is the domicile of the wife, yet in case of permanent separation "the weight of authority is against the application of the rule, as applied to cases of divorce, when the parties are actually living in different jurisdictions."

Thus, in *Shafer v. Bushnell*, 24 Wis., 372, the husband and wife lived together for some years in Wisconsin, when the wife went to Minnesota, and after remaining there a year she commenced an action for and obtained a divorce in a court of that state. She then married Bushnell and returned to Wisconsin. The former husband thereupon prosecuted Bushnell for alleged criminal intercourse with his wife. In that case the present chief justice, giving the opinion of the court, among other things, said: "It appears to us that the

decree of the district court of Minnesota, dissolving the marriage between Mrs. Shafer and her husband, must be deemed conclusive in this state in respect to the *status* or domestic and social condition of the wife. . . . According to the principles of our own decisions, therefore, effect must be given to the judgment of the Minnesota court, although the plaintiff had only constructive notice by publication of the divorce suit." That case necessarily determined that the wife might of her own volition leave the husband in Wisconsin and go to and become a citizen of Minnesota, and then, under the laws of that state made for, and fixing, regulating, and controlling the *status* of, its citizens, and through the aid of its courts, be so far relieved from the *status* which her former marriage had fixed upon her as to enable her to marry again without criminality to herself or the man with whom such marriage was contracted.

Applying that decision to the case before us, and assuming that the Michigan divorce is valid, and not a fraud upon the laws of this state nor the plaintiff, and it would follow that under the laws of Michigan fixing, regulating, and controlling the *status* of its own citizens, of whom *William* had become one, he has been relieved by a court of that state of his former *status* of marriage, so far as to enable him to remarry without criminality in himself or the woman with whom the marriage might be contracted. But the question would still remain: What about the *status* of *Ellen*, who never was a resident or citizen of Michigan, but has all the while been a resident of Wisconsin, which also has the right, and is in duty bound, to fix, regulate, and control the *status* of its own citizens? Has the jurisdiction in which *William* and *Ellen* both resided for many years as husband and wife, and in which *Ellen* still resides, lost all power of determining *her* marriage *status*, and her rights of property by reason of such *status*, merely because *William* has abandoned her and departed from the jurisdiction and entered another, the aid

of which he successfully invoked in obtaining a secret divorce?

The supreme court of Michigan in *Wright v. Wright*, 24 Mich., 181, has answered the question in this language: "We do not by any means concede, however, that if the Indiana divorce had been valid, no relief of the nature demanded could have been granted to complainant in this state. Assuming — as we must, to give the court in Indiana any jurisdiction — that defendant resided within that state, the case would be such that both that state and this had authority, in respect to the marriage relation, to determine upon its validity, or to dissolve it, so far as the party resident within it is concerned. If one proceeds first there is no legal impediment to the other's taking like steps afterwards, *if it appears important to the protection of any property rights.*" It is true, the statute of that state in terms expressly authorized the granting of a second divorce in the discretion of the court at the suit of the resident party, notwithstanding the other party had obtained a divorce in another state. But it will hardly be claimed, that that provision gives or undertakes to give jurisdiction. It merely gives an additional ground for divorce. As already observed, jurisdiction in Michigan, as well as here, is made to depend solely upon the residence of the plaintiff. Being dependent solely upon the residence of the plaintiff in Michigan, it could not be made to depend upon the action or non-action of the courts of other states at the suit of the other party to the controversy. Of course, if the suit in Indiana terminated the marriage *status* of the party residing in Michigan as effectually as it could the one in Indiana, and put each party in the same position as to each other and the property of each as they were prior to the marriage, then a statute authorizing a subsequent divorce would be as ineffectual as a statute authorizing a divorce between two single persons. On the contrary, the provision of the statute in question presupposes that where the parties

live in different jurisdictions a divorce by one, in the jurisdiction in which he resides, does not for all purposes preclude a divorce by the other party in the other jurisdiction.

In *Doughty v. Doughty*, 28 N. J. Eq., 581, affirming *S. C.*, 27 N. J. Eq., 315, it was held that " a decree in a divorce suit will have no extra-territorial effect when the defendant is domiciled in another state, and is not served with process nor with notice of the proceedings. A decree for divorce, to be entitled to extra-territorial effect, when the person of the defendant is without the jurisdiction, must be obtained in a manner consistent with natural justice, and such decree is enforced in another state only on the ground of comity." In that case a divorce was granted at the suit of the wife, notwithstanding a former divorce granted at the suit of the husband in a court of Illinois. In speaking of the Illinois divorce, BEASLEY, C. J., said: "A judgment obtained in such a proceeding, authorized by the local authority, would incontestably have. a local force. Each government has the undoubted right to regulate the formation and dissolution of the marriage contract, so far as such contract affects its own citizens. . . . The consideration that a government has the right to regulate, as to its own citizens, the matrimonial relationship, has now lost the greater part of its force, and it is met by the countervailing principle that such government has no just claim to a right to impose its policy beyond the limits of its own territory. This embarrassment reaches its acme when the parties to the marriage have their domiciles in different states. In such a position of things it is not difficult to declare that a proceeding for divorce, carried on in the state wherein is the domicile of one of the parties, shall operate as to the change of *status* of such party within the territory of such state; but it is difficult to find any principle for declaring that such proceedings shall have the effect of changing the *status* of the other party in the state wherein he is domiciled. . . . The right of the

foreign court to adjudicate, with respect to the *status* of its own domiciled citizens, is undisputed, but I have failed to see how its right to decide the *status* of a citizen of this state, by such adjudication, is to be conceded. . . . All the claim which such an adjudication has to foreign recognition, in my opinion, rests on the ground of comity. . . . But an appeal of this kind to interstate comity should, I think, never prevail, when the judgment sought to be accredited has been rendered in violation of that fundamental axiom of justice, before referred to, that the parties, before their rights are adjudged, shall have an opportunity of being heard."

In *Mansfield v. McIntyre*, 10 Ohio, 27, it was held that a decree in Kentucky did not bar the right of dower in lands lying in the state of Ohio. The court said: "From anything which appears in the case, this divorce ought to be deemed valid in this state as well as in the state where it was pronounced. The petitioner was a resident of Kentucky. The defendant had been a resident. By the laws of that state the court had jurisdiction, and the notice required by their statute had been given. But the real question is whether a divorce decreed in Kentucky, or any other state than Ohio, can have any effect upon the rights of the wife, so far as property in this state is concerned." *Cox v. Cox*, 19 Ohio St., 502, was quite similar, and the court said: "The question, therefore, is whether the *ex parte* decree can be made available, not merely to effect a dissolution of the marriage, but to defeat the right of the petitioner to alimony which the statute, upon the facts as they exist in regard to the husband's desertion, intended to provide for her. We think the decree ought not to have such effect."

Many courts have gone to the extent of holding that a divorce granted upon facts similar to those found in this case is absolutely void as to both parties. *Vischer v. Vischer*, 12 Barb., 640; *McGiffert v. McGiffert*, 31 Barb., 69; *Hoffman*

*v. Hoffman*, 55 Barb., 269; *Phelps v. Baker*, 60 Barb., 107; *Kerr v. Kerr*, 41 N. Y., 272; *Lyon v. Lyon*, 2 Gray, 367; *Shannon v. Shannon*, 4 Allen, 134; *People v. Baker*, 76 N. Y., 78. In this last case the husband was convicted of bigamy. The defense was the record of a divorce in Ohio, in favor of his former wife and against him, showing proof of service of process on the husband by publication. There was no personal appearance by the husband in the divorce suit. The statute of Ohio was in evidence, from which it appeared that the proceedings in that suit were regular and sufficient, and that the judgment was valid and binding under the laws of that state. FOLGER, J., states the question involved thus: "Can a court in another state adjudge to be dissolved and at an end the matrimonial relation of a citizen of this state, domiciled and actually abiding here throughout the pendency of the judicial proceedings there, without a voluntary appearance by him therein, and with no actual notice to him thereof, and without personal service of process on him in that state? . . . We are ready to say that as the law of this state has been declared by its courts, that question must be answered in the negative. . . . We must and do concede that a state may adjudge the *status* of its citizens towards a nonresident, and may authorize to that end such judicial proceedings as it sees fit; and that other states must acquiesce so long as the operation of the judgment is kept within its own confines. But that judgment cannot push its effect over the borders of another state, to the subversion of its laws and the defeat of its policy; nor seek across its bounds the person of one of its citizens, and fix upon him a *status* against his will and without his consent, and in hostility to the laws of the sovereign of his allegiance. It is said that a judicial proceeding to touch the matrimonial relation of a citizen of a state, whether the other party to that relation is or is not also a citizen, is a proceeding *in rem*, or, as it is more gingerly put, *quasi in rem*. But it was never

heard that the courts of one state can affect in another state the *rem* there, not subjected to their process, and over the person of the owner of which no jurisdiction has been got. Now, if the matrimonial relation of the one party is the *res* in one state, is not the matrimonial relation of the other party a *res* in another state?" The able judge then likens it to proceedings *in rem* against lands held in trust by trustees, all of whom reside in another state, and where no personal service of process is had only by publication. He then continues: "If one party to a proceeding is domiciled in a state, the *status* of that party, as affected by the matrimonial relation, may be adjudged upon, and confirmed or changed, in accordance with the laws of that state. But has not the state, in which the other party named in the proceedings is domiciled, also the equal right to determine his *status*, as thus affected, and to declare by law what may change it and what shall not change it? If one state may have its policy and enforce it, on the subject of marriage and divorce, another may. And which shall have its policy prevail within its own borders, or shall yield to that of another, is not to be determined by the facility of the judicial proceedings of either, or the greater speed in appealing to them." The learned judge concludes: "We are not, therefore, satisfied with the doctrine that rests the validity of such judicial proceedings upon the right and sovereign power of a state to determine the *status* of its own citizens, and because it may not otherwise effectually establish it, asserts the power to adjudge upon important rights without hearing the party to be affected, and without giving him the notice which is required by the principles of natural justice, he being all the while beyond its jurisdiction. Besides, a just consideration of what is a proceeding *in rem*, and of the effect of a judgment therein, shows that the latter does not reach so far as is contended for it. It is a proceeding *in rem* merely. The judgment therein is not usually a ground of action *in personam* in another jurisdiction, for,

Cook vs. Cook. imp.

as a proceeding *in personam*, or as giving foundation for one, the court gets no jurisdiction." Such is a logical statement of a perplexing question by a learned and able jurist. The force of such foreign judgments, obtained under such circumstances, rests upon the principles of comity, and that does not go to the extent of absolute conclusiveness. 76 N. Y., 84–86; *Bradshaw v. Heath*, 13 Wend., 416; *Pennoyer v. Neff*, 95 U. S., 714; *Van Fossen v. State*, 37 Ohio St., 317; 25 Alb. Law J., 254; *Thompson v. Whitman*, 18 Wall., 457. In this last case it was held that "want of jurisdiction may be shown either as to the subject matter or the person, or, in proceedings *in rem*, as to the thing."

In *Stilphen v. Stilphen*, 58 Me., 508, it was held that "the fact that the husband has already obtained a divorce *a vinculo* is no bar to the granting of a like divorce to the wife, when, in the exercise of a sound discretion, it is deemed reasonable and proper." The court there say: "But it is said that when one party has been divorced the other may lawfully marry again. Therefore, there is no necessity for a second divorce. If the sole object of a divorce suit was to enable one or both of the parties to marry again, this argument would be entitled to great weight. But this is not the case. The ultimate object is, in many cases, to enable the court to decree concerning the care and custody of the children, and make provisions for their support and education, and to secure to the wife such portions of the common estate as justice and humanity may dictate. The decree for a divorce may in such cases be regarded as a mere matter of form, necessary only to enable the court to make the ancillary decree; for in terms the law does not authorize the court to make the latter without first making the former." Page 515.

We have thus quoted at length from some of the best considered cases in the country, because the question involved is upon the border line, where much confusion among judicial opinions prevails, with the view, if possible, to reach a con-

clusion which will come the nearest to doing justice to parties who are unwilling to do justice to themselves, and at the same time preserve a just comity to the judicial determinations of a sister state, and the proprieties and decency of society at large. Every state has its own statutory policy with respect to marriage and divorce. Wisconsin has hers. This court has determined that it relates entirely to its own citizens, and not to the residents of other states, even though they are joined in marriage with persons residing in this state. Our statute declares that "when a judgment of divorce from the bond of matrimony is granted *in this state* by a court of competent authority, such judgment shall fully and completely dissolve the marriage contract as to both parties." Sec. 2374, R. S. Michigan had no such statute. We have no statute declaring what shall be the effect of a foreign divorce. It is, moreover, the policy of the statute to guard and protect the wife. Upon entering the marriage relation, she at once acquires an inchoate interest in her husband's property — his lands and especially his homestead. Without her signature his deed of the homestead is ineffectual for any purpose. Without her signature he can only convey an imperfect title as to his other lands. Besides, the husband is under obligations, if capable, to support his wife even if he has no lands. This obligation is so binding that this court has already held, as above indicated, that it continues even after a valid judgment of divorce granted in this state.

Thus the marriage *status* of the husband involves, not only his allegiance and fidelity to his wife, but an obligation of support, and a surrender to her of a certain inchoate interest in his lands. So the marriage *status* of the wife involves, not only her allegiance and fidelity to her husband, but a condition of security in respect to her future support and an inchoate interest in his lands, and especially his homestead. The marriage *status* of each also involves the care, custody,

education, and control of the children of such marriage. The Michigan judgment, as indicated by the record, is entirely silent upon the subject of alimony, allowance to the wife, or any division of his property, or any property rights. It was a judgment *in rem*, but the only thing purporting to be affected by it is the allegiance, fidelity, and contract relation to his wife. It simply undertook to sever that relation. It made no allowance for alimony or support. It did not attempt to determine any right to property, nor the wife's interest in any property. It is silent as to the *status* of the wife to his lands in Wisconsin by reason of the marriage. To give such a judgment the effect of barring the wife of all interest in the Wisconsin lands, is to enlarge its provisions and incorporate in it, by way of comity, what the Michigan court had no power or jurisdiction to adjudge. It would be to enable the husband to do, by way of desertion and a secret foreign divorce, what it would have been impossible for him to have accomplished had he remained a resident of this state. To give the judgment such an effect, would be to offer a premium to all discontented husbands by way of deserting their wives and obtaining a secret divorce in a foreign jurisdiction, and thus relieve his lands in this state of all inchoate interest on the part of the wife, and himself of all obligations to pay any alimony, allowance, or support. It would thus put it in the power of the husband to do, through the instrumentality of a foreign jurisdiction, what he could not do in the courts where he and his wife both resided. We are not disposed to sanction so great an imposition upon our own citizens, and the domestic policy of our own state. Besides, the service upon which the Michigan judgment was based, was under a statute of that state, unlike ours, purely constructive. It was by publication only. No effort seems to have been made to send any notice to the wife, and she received none, notwithstanding her residence

and post office address must necessarily have been known to the husband.

Upon the facts found, the authorities cited, and the reasons given, we are constrained to hold that, although marriage is a *status*, and every state has the right to fix, regulate, and control the same as to every person within its jurisdiction, even though one of the parties may at the time actually reside in another state, yet where a husband and wife were both for some years residents of this state, and lived and cohabited together therein as husband and wife upon lands belonging to the husband, and the husband deserted the wife and went to another state, where he became a resident, and thereupon obtained a divorce in that state upon constructive notice merely, and for a cause of action (desertion) alleged to have occurred a year prior to the time when he deserted from his wife, and under a statute which made jurisdiction dependent entirely upon the fact of such husband's residence there, against the wife, who continued to reside upon the same lands, and who was not personally served with notice, and who did not appear in the action, but was ignorant of its pendency until after the decree therein was rendered, such judgment is not conclusive against the wife so as to bar a subsequent action by her in a court of this state against the same husband for a divorce, alimony, allowance, and division of such lands so situated within this state, especially where such foreign judgment of divorce was based upon an alleged cause of action which was false in fact.

*By the Court.*— The judgment of the circuit court is affirmed.

TAYLOR, J.    While I concur in affirming the judgment in this case, I am unable to concur in all the reasons which are assigned therefor in the opinion of Justice CASSODAY. I think if the judgment of the Michigan court affected the

Cook vs. Cook, imp.

*status* of the husband and released him from the marriage with his wife, then he is no longer her husband, either in the state of Michigan or in any other state. It is difficult for me to understand how the husband can be unmarried and the wife remain married. If the courts of Michigan have the power to fix the *status* of a citizen of that state in regard to the marriage relation, in an action where the wife is not personally served and has no actual notice of the action, and is a resident in fact of another state, it seems to me to follow, as a matter of course, that it must necessarily affect the *status* of the wife, and she must also be released from the marriage relation. To me there does not appear to be any middle ground. Either we must hold, as the courts of New York hold, that a divorce under such circumstances has no force outside of the state in which it is granted, or we must hold that is effective to destroy the marriage relation as to both parties in all places. This seems to have been the view taken by this court in the cases of *Shafer v. Bushnell*, 24 Wis., 372 and *Hubbell v. Hubbell*, 3 Wis., 662; and the like view seems to have been entertained by the supreme court of the United States in the cases of *Cheever v. Wilson*, 9 Wall., 108–123; *Pennoyer v. Neff*, 95 U. S., 714, 733, 734.

But holding this view of the case I am still of the opinion that when a divorce has been granted without notice in a foreign jurisdiction, the wife at the time living in this state, and there being property here owned by the husband at the time of the divorce in which the wife has inchoate interests, and which interests have not been secured to her by the divorce, and no other adequate provision has been made for her just alimony, that a court of equity in this state may, upon the ground of such foreign divorce, entertain an action for alimony out of such property. It may be true that alimony cannot be granted except in a divorce case. Yet it is the constant practice to review that part of a judgment for divorce which awards alimony after the judgment, and to

change the same when the altered circumstances of the parties seem to require it. *Campbell v. Campbell*, 37 Wis., 206–211; *Williams v. Williams*, 29 Wis., 517; *Forrest v. Forrest*, 25 N. Y., 501. It would seem to be no great stretch of authority to entertain a procceding to award alimony to a wife out of the husband's property in this state, upon the foot of a divorce granted to the husband in another state, of which she had no notice until after judgment, and by the terms of which she was not awarded a reasonable compensation by way of alimony, or even when no alimony was awarded. The power of the court to award alimony to a wife in a divorce suit does not depend on the fact that some alimony was awarded at the time the judgment for divorce was granted. The fact that no alimony was then awarded by the court is no bar to its being afterwards awarded. See cases above cited. Chief Justice RYAN, in the case of *Campbell v. Campbell*, says: "The questions of alimony and custody of the children may, in the first instance, be included in the judgment of divorce, or in a subsequent and separate judgment." *Welch v. Welch*, 33 Wis., 534.

It does not follow that no provision for alimony can be made to a wife after judgment of divorce, unless the application for such alimony be made before or at the time the judgment of divorce is entered; and the case of *Damon v. Damon*, 28 Wis., 510, is not in conflict with this idea. All there is said in this case is that no judgment for alimony can be granted to the wife, unless she obtains a divorce from her husband. It has not, so far as I have been able to discover, been decided by this court that a wife after judgment of divorce has been entered between her and her husband, and no provision made at the time for her alimony, that she cannot afterwards apply to the court and have alimony awarded to her. It appears to me that the cases above cited, showing that the court will, after a divorce and an order for alimony has been made, change such order when the subsequent con-

ditions and necessities of the parties make it equitable that there should be such change, covers the case of a subsequent application for alimony when no such order was made at the time of the divorce; and this should be so where the wife has never had notice of the proceedings, and so has had no opportunity to make the application at the time the divorce was granted. As the husband could not have been prejudiced by the formal judgment for a divorce from a woman from whom he was already divorced; and as the order for giving alimony was undoubtedly a just allowance, under the circumstances, the judgment should be affirmed so far as the award of alimony is concerned.