PRICE, Respondent, vs. RUGGLES, Appellant.

*October 15—November 9, 1943.*

188

For the appellant there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill.*

For the respondents there was a brief by *Mason, Priestly & Burke* and *Richard R. Rynders,* all of Madison, attorneys for Mary C. Nicholson, and by *Harry A. Speich* of Mineral Point, attorney for Robert McCutchin, and oral argument by *Mr. Rynders* and *Mr. Speich.*

For the respondent Jennie Ruggles there was a brief by *Gibbon & Hamilton* of Dodgeville, attorneys, and *Boardman & Jones* of Mineral Point of counsel, and oral argument by *David O. Jones*.

FOWLER, J.   The action is partition.   The plaintiff, Sarah C. Price, owns an undivided one-half interest in the forty acres in suit.   The other one half is owned by her brother William Guy Ruggles, hereinafter referred to as "Guy."   The land was adjudged to be sold and the proceeds distributed to the parties according to their interests as determined by the court.   Judgment creditors of Guy claim right to be paid the amount of their judgments out of Guy's share of the proceeds.   Guy claims homestead rights in the land and to be entitled to one half the proceeds of the sale free from claims of the creditors.   The defendant Jennie Ruggles, hereinafter referred to as "the first wife" of Guy, claims a dower right in Guy's one-half interest in the land and to be paid from the proceeds of the sale the value of that right.   She claims that Guy's marriage to Helen Ruggles, hereinafter referred to as "the second wife" of Guy, subsequent to his procuring a divorce from the bonds of matrimony between Guy and herself granted by a Texas court did not cut off her dower right because the only service of summons in that case was by publication.   The trial court determined that the first wife had an inchoate dower right in the tract, and adjudged payment of the value of that right to her out of the one half of the proceeds of the sale attributable to Guy's one-half ownership, and that this right of payment was superior to the claims of the judgment creditors of Guy.

As to the homestead right of the defendant Guy, the court held that the same accrued on September 12, 1934; that the judgment of defendant Robert McCutchin against Guy for $1,714.60 entered July 5, 1934, became a lien on his one-half interest in the land and should be paid out of the net proceeds

of the sale attributable to Guy's interest; that the judgments of the other two judgment creditors were entered subsequent to September 12, 1934, and did not become a lien upon Guy's interest in the land. The property sold for some $4,225 and the share of Guy therein after payment of the dower rights of the first wife and expenses and costs adjudged to be paid out of the share of Guy was insufficient to pay the lien of the judgment of Robert McCutchin. Guy is the only appellant, and neither judgment creditors nor the second wife filed a motion for review.

The questions for determination argued in the briefs are, (1) When did the homestead right of Guy attach to the land? (2) Did the divorce judgment of the Texas court bar the first wife from her inchoate dower right in the land?

(1) The conflicting claims as to homestead rights arise under the terms of the will of Lucinda Ruggles, grandmother of Guy and Sarah, under which they acquired title. The forty acres in suit belonged to the grandmother. She devised the land to her husband, the grandfather of Guy and Sarah, during his life; to her son William Gardner Ruggles, the father of Guy and Sarah, who will hereinafter be referred to as "the father," during his life, but with a provision relating thereto denominated in the will as a condition; and the remainder to Guy and Sarah. The grandfather died in 1899 and the father then went into possession. The provision above referred to was that the father's life estate should be "upon condition" that he "keep in good repair the buildings and fences thereon" and "pay and discharge all taxes levied thereon as soon as the same shall become due and payable," and that he should not "commit waste." The father failed to perform the things specified. After the father had so failed, the second wife went to live upon the premises, the father being alive and also living thereon. She began so to live in 1932 and continued to do so until the father died on September 12, 1934. The judgment adjudged a lien was

entered July 5, 1934. Guy was with the second wife on the premises for a short time in 1932, but was in another state attending to settlement of business affairs the remainder of the time until his father's death. While so absent he left his clothes and some household goods in the house on the tract. He and the second wife testified that they went on the place in 1932 intending to make it their permanent home, and ever thereafter so intended. After the father's death Guy lived upon the place continuously. He made some slight repairs of the premises prior to the father's death and some considerable repairs thereafter.

The appellant contends that the life estate of his father created by the language of the will of his grandmother was limited to terminate *ipso facto* upon his failure to perform the acts designated in the will as conditions, citing *Smith v. Smith,* 23 Wis. 176, and *Weymouth v. Gray,* 167 Wis. 218, 167 N. W. 270, in support, and that his possessory right as remainderman then attached without his taking any affirmative action to assert it. He also claims that his homestead rights attached to the land when his second wife began to live thereon. The respondent creditors claim in effect that the language created a condition subsequent by which nonperformance of the acts stated as a condition divested the life estate of the father and advanced Guy's possessory right if he chose to assert it by ousting his father, but that the father's life estate continued until Guy or his sister took some affirmative action equivalent to his ouster.

Solution of the question seems to depend on whether the language of the will created in the father a "special limitation," Restatement, 1 Property, sec. 23, a "condition subsequent," Restatement, sec. 24, or an "executory limitation," Restatement, sec. 25. These sections are quoted in the margin.[1] To

---

[1] Sec. 23. The term "special limitation" denotes that part of the language of a conveyance which causes the created interest automatically to expire upon the occurrence of a stated event, and thus

bring the language of the will under sec. 23 the language must indicate that the life estate automatically expired upon the nonperformance of the acts stated and "provides for a terminability in addition" to the death of the father.

Sec. 24, Restatement, provides that to create a condition subsequent, the language of the will must indicate that upon nonperformance of the acts stated the "successor in interest" of the testatrix, that is the owner of the fee, Guy and Sarah, had "the power to terminate the interest" of their father, but that the interest of the father would continue until the power was exercised. For the language to create a condition subsequent it should indicate that the life estate of the father would not terminate automatically by nonperformance by the father of the acts stated, but would continue until Guy or his sister "chose to exercise" the power to terminate the father's life estate. See comment *b* under sec. 24. That the language should create the "executory limitation" defined by sec. 25

provides for a terminability in addition to that normally characteristic of such interest.

Sec. 24. The term "condition subsequent" denotes that part of the language of a conveyance, by virtue of which upon the occurrence of a stated event the conveyor, or his successor in interest, has the power to terminate the interest which has been created subject to the condition subsequent, but which will continue until this power is exercised.

Sec. 25. (1) Except as stated in subsection (2), the term "executory limitation" denotes that part of the language of a conveyance, by virtue of which

(a) the interest subject thereto, upon the occurrence of a stated event is to be divested, before the normal expiration thereof, in favor of another interest in a person other than the conveyor or his successor in interest; or

(b) an estate in fee simple determinable, or an analogous interest in a thing other than land, or an estate in fee simple conditional, concurrently with its expiration, is to be succeeded forthwith by another interest in a person other than the conveyor or his successor in interest.

(2) The term "executory limitation" does not denote that part of the language of a conveyance which creates a remainder on condition precedent, the fulfilment of which can divest a reversionary interest left in the conveyor or his successor in interest.

it should declare that the father's life estate, on nonperformance of the acts stated, should be divested in favor of some person other than the testatrix or Guy and his sister who were her "successors in interest" as owners of the fee. As under the language of the will the "divesting" is not in favor of such other person but in favor of Guy and his sister, sec. 25 does not apply.

We are of opinion that the language of the will created a "condition subsequent." The language does not expressly provide for the exercise of the power to terminate the father's life estate upon nonperformance of the acts stated, but it is manifest that the nonperformance of the acts stated was inserted for the benefit of the grandchildren,—that is to require the father to preserve the estate for their benefit. Being for their benefit, the grandchildren could waive the nonperformance, or could by acts of ouster of the father assert their power to terminate his life estate. The language being contained in a will, the fundamental rule should be followed that the intent of the testator must be effectuated. It seems to us that the testatrix intended that the father's life estate should continue until the children saw fit to terminate it. If neither Guy nor his sister took possession of the land prior to the father's death neither of them could secure a homestead right in the land until after that time. But if Guy took possession of the land and lived upon it prior to the father's death to the exclusion of his father from all use of and interest in the tract, then he acquired a homestead right when he took possession and excluded his father. Thus whether Guy acquired a homestead right prior to the father's death depends on the nature of the status of the father while Guy and his second wife were on the premises and while the wife was there during his absence. If Guy took the avails of the land during that time and supported the father as a mere member of his family, or a boarder and roomer, Guy's homestead right attached when his second wife went to live on the land. On

the other hand, if the father managed the land and had the avails thereof and Guy and the wife and the wife during Guy's absence were there as members of the family of which the father was the head, then Guy's occupancy of the land began and his homestead rights attached at the father's death and the county court's judgment as to the time the homestead rights attached is correct. What the family relationship was is to be determined from the evidence.

There is no express finding that the father failed to keep the premises in proper repair, but it is undisputed that he grievously failed in this respect and in regard to payment of the taxes, so that there was such a breach of the provision under which he took his life estate that the plaintiff and Guy had a right to oust him from the premises had they chosen to do so. The question here is were the facts in connection with the second wife's coming to and staying on the premises and Guy's infrequent and short presence there such as to compel a finding of such ouster?

The facts specifically found by the trial court bearing on this question and the dependent question as to Guy's homestead rights are that "William Gardner Ruggles [the father] continued and remained in possession thereof [the forty-acre tract] up to the time of his death;" and that—

"the defendant, Helen M. Ruggles [the second wife], lived in and on the premises hereinbefore described with the life tenant, William Gardner Ruggles, for some time prior to his death and that the defendant, William Guy Ruggles, for a rather indefinite period, lived in and on said premises during the lifetime of said William Gardner Ruggles and prior to his death, but that neither the said Helen M. Ruggles or the defendant, William Guy Ruggles performed such actual and overt acts in relation to their said possession during the lifetime of the life tenant, William Gardner Ruggles, as to bring the real estate within the homestead statutes prior to the death of said life tenant."

We discover no special finding of facts as to Guy's occupancy and use of the premises after his father's death, but

from the ruling that judgments of the creditors other than Robert McCutchin, whose judgments were entered subsequent to the father's death, were not a lien on the premises, and that Robert McCutchin's judgment which was entered before his death was such lien, it is manifest that the court inferentially found that Guy's occupancy and use of the tract after the father's death was such as to give him homestead rights therein. We cannot say that any of the findings of the trial judge are contrary to the great weight and clear preponderance of the evidence, and therefore cannot disturb them.

(2) The question of the first wife's right to an allowance for her inchoate right of dower is most interesting. Sec. 276.36, Stats., provides that on sale of land in suits in partition the wife of an owner shall be allowed the value of her inchoate right of dower. We have given the question considerable examination but neither the second wife, the first wife, nor any creditor is in any position to contest the instant allowance. None of them has appealed or filed a motion for review. Guy has appealed and he would have right to contest the allowance but for the fact that his share of the proceeds of the partition sale is all absorbed by the lien of the judgment antedating the acquisition of his homestead rights and would be so absorbed if the allowance were reversed. Robert McCutchin would have the right to contest the ruling that the allowance to the first wife should be paid out of the portion of the net proceeds of the sale attributable to Guy's share before he received satisfaction of his lien had he sought to do so. The result is that the allowance must be affirmed, although we doubt whether if the right to be paid exists it is superior to the judgment lien. However, we may point out that under the recent decision of the supreme court of the United States, *Williams v. North Carolina,* 317 U. S. 287, 63 Sup. Ct. 207, 87 L. Ed. 279, which overruled *Haddock v. Haddock,* 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, there can be no question that the marriage status of the first wife was destroyed by a divorce procured by Guy in the state

of Texas wherein service was procured by publication and in which she did not appear. She being no longer Guy's wife is she entitled to an allowance for the inchoate right of dower which she had when the divorce was granted? At common law and under sec. 233.01, Wis. Stats., for a woman to acquire a dower interest in a man's land she must have been his wife at the time of his death. Only widows, under the language of sec. 233.01 have a dower right. And to have an inchoate right to dower in land must not a woman be the wife of the man who owns the land? For the first wife to have been entitled to have an inchoate right of dower valued and awarded to her as it was awarded in the instant case, must she not have been the wife of Guy at the time she applied for the allowance of her claim of inchoate right of dower? The granting of divorce from bonds of matrimony at common law apparently barred the wife's dower. See 2 Bishop, Marriage & Divorce, secs. 1631 to 1640, and sec. 247.36, Wis. Stats., expressly so declares. The adjudicated cases in the American courts are in conflict on this question. But if the first wife was not entitled to dower, was it not in the power of the county court, which had jurisdiction of the person of both herself and Guy, to grant the first wife an allowance as alimony or as final division of property between them. *Williams v. North Carolina, supra,* expressly disavows considering the effect of the divorce judgment upon the property rights of the parties. In 42 A. L. R. 1385, is a note entitled "Divorce upon constructive service as affecting power to allow alimony upon subsequently obtaining personal jurisdiction over former husband." On page 1392 of this note is a subhead entitled "Service procured by husband." Cases in Alabama, Colorado, Kansas, Michigan, Minnesota, Ohio, Tennessee, and Wisconsin are stated as to the precise point that alimony may be granted. Several cases to the contrary are also stated. The Wisconsin case cited in the note is *Cook v. Cook,* 56 Wis. 195, 14 N. W. 33, 14 N. W. 443.

This case is to the point that a divorce granted in a state other than that of the wife's residence upon service by publication only is not a bar to a subsequent suit by the wife in this state based on personal service upon the husband for a divorce and alimony and a division of the property situated within this state. The decision goes on the proposition that the granting of the divorce in the other state did not destroy the marriage status of the wife which is contrary to the decision in the *North Carolina Case, supra,* which is conclusive on that question as it is based on the "full-faith-and-credit" clause of the United States constitution, sec. 1, art. IV. There is a concurring opinion in the case by Mr. Justice TAYLOR in which he expressed the view that under the circumstances involved, if the divorce destroyed the wife's marriage status, she might, upon personal service upon the former husband, no alimony or dower having been awarded her by the divorce judgment, prosecute a suit in equity for alimony out of his property. It would seem that in this state a wife situated as was the first wife might bring an action for alimony even though the husband had no real estate or other property within it. Else a man worth a million dollars in personal property might leave the state, take all his property with him, go to Nevada and get a judgment of divorce after staying there sixty days and thus throw his wife and the burden of her support upon the public. We leave the questions here suggested for future decision in a case wherein it may be more fully briefed and argued than the amount herein involved justified.

*By the Court.*—The judgment of the county court is affirmed.